## Audenreid's Appeal.

A. was about seventy years old, infirm in health and a great part of the time confined to his house, but of sound mind and good judgment. F. was his physician and confidential friend. W. agreed in writing with A. to secure for A. an interest in certain stock, which interest W. alleged he controlled, W. to receive a portion of the proceeds to result from the appreciation of the stock. The stock appreciated largely in value, and W. received a share of the proceeds, but the court below rescinded the contract and ordered him to return the share of the proceeds he had received, on the ground that his representations as to his control of the interest transferred to A. were false. The day after the execution of the contract between W. and A., the latter and F. executed a second contract, wherein A. covenanted to transfer to F. a certain share of his interest in said stock, the consideration recited therein being one dollar, and that F. had, through his negotiations with W., secured the interest which A. had obtained under his contract with W. The portion of the proceeds received by F. was about $50,000. After his decease the executors of A. filed a bill in equity, charging a conspiracy between W. and

[Audenreid's Appeal.]

F. to defraud their testator, and praying that the deed between A. and F. be declared void, and that an account should be taken of the profits received by F., and the same returned to plaintiffs. *Held* (affirming the court below), that F. could show that the transfer of the stock to him was a gift, and not for the consideration recited in the contract, and that the allegations of fraud contained in the bill, having been specifically denied by the answer of defendant, the burden was on the plaintiffs to show that a gift was not intended by the testator.

2. There is nothing in the confidential relation of a medical adviser to a patient that *per se* forbids the acceptance of a gift by him from his patient.

February 11th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Appeal from Court of Common Pleas, No. 1, of *Philadelphia county:* Of January Term 1876, No. 224. In Equity.

This was a bill in equity filed by William G. Audenreid, Richard R. Robb and Thomas T. Jaeger, executors of Louis Audenreid, deceased, against Jonas M. Walker and William S. Forbes, M. D., charging a conspiracy on the part of the defendants to defraud the plaintiffs' testator, and praying that certain contracts entered into between Walker, Forbes and the deceased be declared void, that an account might be taken of all profits received by virtue of said contracts, and a transfer of all securities acquired thereunder be made to the plaintiffs, and that each defendant might be required to make good any default of the other in so accounting.

The alleged facts upon which the relief prayed for was sought were, that the testator was at the time of the perpetration of the fraud an old man over seventy years of age, infirm, wealthy and given to speculation; that these facts were known to the defendants; that in the autumn of 1872, Walker applied to the promoters of the Texas and Pacific Construction Company, a corporation with a proposed capital of $10,000,000, for permission to obtain a subscriber to $250,000 worth of the capital stock of said corporation; that it was then ascertained by the said Walker that the testator would be accepted as a subscriber to that amount on the stipulated terms; that the defendants then combined to induce Audenreid to furnish the above capital, under false pretences; that Forbes introduced Walker to Audenreid, and that Walker induced him to believe that he, Walker, had the sole privilege of disposing of $250,000 worth of the capital stock of the said corporation; that Walker actually owned that amount, and that no other such amount could be then purchased on as favorable terms as those offered by Walker; that these representations were untrue, and were intended to and did induce Audenreid to subscribe for the said amount of stock, which was done by him in the joint names of himself and Walker, and in consequence of the foregoing representations Audenreid allowed Walker to own one-fifth of the said amount of stock, it being agreed that Walker should not pay his instalment until the last, while Forbes was paid for his price of the agency in

introducing the matter to Audenreid, and enabling him to obtain the bargain on so favorable terms, by a conveyance of one-fifth of the said stock, with the accruing profits thereon, Audenreid paying for the same.

As evidence of these matters, there were appended to the bill two agreements under seal, dated respectively the 25th and 26th October 1872, the first signed by Walker and witnessed by Forbes, and the second signed by Audenreid and Forbes, in the first of which the terms of the joint purchase between Walker and Audenreid were settled, the first deed purporting to convey on Walker's part to Audenreid capital stock to the amount of $200,000, falsely alleged in the instrument to have been at that time secured by Walker for himself. The second deed conveyed to Forbes one-fourth of the $200,000 worth of capital stock conveyed to Audenreid in the preceding instrument, upon the false consideration, therein recited, that Forbes had secured to Audenreid the said $200,000 worth of capital stock by virtue of the foregoing contract between Audenreid and Walker, which contract is in the last deed alleged to have been negotiated and secured through the agency and intervention of Forbes.

The bill charged fraud on the ground that Walker had no interest at the time of the conveyances, averred payment of the whole amount by Audenreid and his executors, and asked for a declaration that the foregoing deed should be set aside as fraudulent, and the property transferred to the defendants reconveyed to the plaintiffs.

The answer of Forbes denied fraudulent combination with Walker, admitted Audenreid's age and infirmity of health, wealth and disposition to engage in speculations; averred a belief, that such a share as was purchased by Audenreid had been reserved for his co-defendant, and that at the time of the execution of the first of the foregoing deeds, Walker had control over such a share; admitted that he was Audenreid's medical adviser, and very intimate with him; averred a request by Audenreid for an introduction to Walker, and an introduction in pursuance thereof; averred that he, Forbes, had received Walker's written proposition, viz., the deed of 25th October, from Walker's counsel, and had carried it to Audenreid shortly before the date of its signing; denied the considerations set out in the conveyance signed by him of the 26th October, and averred that the real consideration of said conveyance was friendship on the grantor's part, the transfer being intended as a gift, and no other consideration having passed; that the consideration stated in the deed had been introduced at his counsel's suggestion, who advised him to draw it up in the form of a contract for services rendered, and that this had been explained to Audenreid, and acquiesced in by him. The answer averred important medical services performed by the defendant for Audenreid.

The answer of Walker denied fraudulent combination; alleged that Walker did have an interest over such a share as was purchased by Audenreid and himself at the time which had been specially reserved for him by one of the promoters of the enterprise; denied that he had consulted the company as to accepting Audenreid as a subscriber; denied that the stock conveyed to Audenreid was open to the latter, or any other share, upon equally favorable terms, and admitted the payment by Audenreid and his executors of the full amount of $250,000.

The court heard the case upon the pleadings and proofs, and in an opinion, Allison, P. J., said:

"The bill charges a conspiracy on the part of the defendants to defraud Lewis Audenreid.

"The conspiracy is alleged to consist of a combination or agreement on the part of Walker and Forbes to induce Audenreid to subscribe for $250,000 of the capital stock of a company, organized with a capital of $10,000,000, for the construction of a railway from the Mississippi to the Pacific Ocean. This conspiracy is charged to have been founded in fraud, and to have been carried into effect by misrepresentation of material statements made to Audenreid, and by concealing from him material facts which in good faith they ought to have disclosed. Forbes was the medical attendant of Audenreid, and Walker was at the time vice president of the Shenandoah Valley Railroad.

The plaintiffs assert that Walker, prior to the 2d of November 1872, applied to the construction company for permission to obtain a subscriber for a block or parcel of stock of said company, amounting to $250,000, suggested the name of Audenreid, and ascertained that he would be accepted as a subscriber.

Mr. Audenreid was about seventy years old, quite infirm in health, and during the greater part of the time confined to his house. It is further asserted by plaintiffs, that taking advantage of his condition, defendants, under false pretences, sought to obtain from him large interests in the property thus acquired. That Forbes introduced Walker to Audenreid, and that they induced him to believe that Walker was the owner of one of the shares, and that no other share could be got at all, or at least, not on as favorable terms as were offered by Walker, and that the stock would rise rapidly and greatly in value.

"The first two of these assertions, it is charged, were untrue, and that in consequence of the inducements held out to him, Audenreid was led to subscribe for a share in the joint name of himself and Walker, and to allow Walker to become the owner of one-fifth of that share, and of any profit derived from it, upon his undertaking to pay the one-fifth of the most deferred of the instalments; out of which profits Walker expected to receive a larger sum than would be required to pay for his proportion of the stock;

and as the price of the agency of Forbes in introducing the scheme to Audenreid, the latter agreed to give Forbes one-fourth in his interest of four-fifths of a share to be purchased and paid for exclusively by Audenreid.

"Agreements in writing were executed by the said parties to carry these several schemes into effect, and Audenreid, on the 2d of November 1872, made his subscription for himself and Walker upon the books of the company. The agreement with Walker is dated October 25th 1872, whereby he transferred to Audenried four-fifths of one undivided fortieth of the whole capital of said construction company, which he, Walker, 'hath heretofore secured for himself, his heirs and assigns.'

"The agreement between Audenreid and Forbes bears date October 26th 1872, and recites that for the consideration that Forbes had secured to Audenreid an interest in the capital stock of the California and Texas Pacific Railway Company, under the contract between Walker and Audenreid, which was negotiated and secured through the agency and intervention of Forbes, and the further consideration of $1, Audenreid agreed to transfer to Forbes one-fourth of his interest in the stock of the company, and to deliver to him one-fourth of all stock, bonds, property and funds which he should receive from said company, and pay for calls for instalments on his entire four-fifths interest.

"It is claimed by the plaintiffs that these contracts are fraudulent, by reason of the misrepresentation of the material facts of Walker's ownership of an interest in the company, when he had no interest whatever, and that no other interest could be obtained by Audenreid at all, or on as favorable terms as that offered to him by Walker, and in concealing the fact that this and many other shares were open for subscription to any one capable of complying with its terms.

"In the 13th paragraph of the bill, it is charged that these agreements were procured from Audenreid by combination and misrepresentation; that Walker's alleged ownership of interest in said company was false, and that this was known to Forbes, who attested the agreement between Audenreid and Walker, as a witness, and that in the articles signed by Audenreid and Forbes, Forbes's agency in this scheme, charged to be fraudulent, is assigned as the consideration for the interest which Forbes obtained from Audenreid in the share and in its profits.

"In the 16th paragraph of the bill, plaintiffs claim that Walker was the agent of Audenreid in respect to the negotiations which resulted in the subscription to the stock; that he accepted such agency before making his contract with Audenreid; that prior thereto, he had applied to the promoters of the enterprise, and had been informed that Audenreid would be accepted as a subscriber, and that in either event, whether such application was made before

or after their agreements with Audenreid, they became his agents, and were bound to inform him truly on what terms he might subscribe, and undeceive him as to all material facts upon which he had been induced to enter into the agreement with them.

" Upon the stock for which Audenreid subscribed, $222,500 have been paid, leaving still due $27,500, for which the estate of Audenreid is liable.

" Audenreid received from the construction company one hundred and sixty-two land grant bonds for $1000 each; of these plaintiffs state that Walker demanded and received thirty-two bonds on the 17th of July 1873, and that on the same day Forbes received thirty of said bonds.

" The relief which plaintiffs ask is, that the contracts between Walker and Forbes and Audenreid shall be declared to be fraudulent on the part of Walker and Forbes, and that they are not entitled to retain or to receive any profits under the same.

" That an account be taken of all profits received by them under the contract, and that the securities which they have received may be transferred by them to plaintiffs.

" That each of the defendants may be required to make good any default in the other, in the said accounting for and transfer of the securities or profits they may severally have received.

" The defendants have made separate answers, in each of which they deny, in the most positive terms, the charges of fraud and of fraudulent combination.    These denials are made by each defendant for himself individually, and for his co-defendant, in every particular, where confederation and agreement is charged against them, and cover alike the assertions of misrepresentation and of concealment of material facts touching the transaction.

" Forbes says, in the eighth paragraph of his answer: It is false that he had ascertained that Mr. Audenreid would be accepted as a subscriber; it is false that he combined with Walker to induce Audenreid to furnish the requisite capital to obtain one of the shares, or that, under false pretences, they intended to obtain any interest from him in the property; nor did they, or either of them, make any representation of Walker's ownership of a share, or that no other share could be got upon the terms charged in the bill.    He asserts that he made no representations of Walker's ownership, and that he did not, on that occasion, introduce Walker to Audenreid, and that they had been acquainted for months previously.

" In the eleventh paragraph he also denies that, in consequence of any false representation by defendants, or either of them, Mr. Audenreid was induced to make the agreement which plaintiffs now seek to have set aside as fraudulent.

" With equal emphasis and particularity is set out in his answer the denial of Walker of the charges of fraud which are made against him, with one exception, namely: that which relates to his ownership of stock, and that no other stock could have been procured by

[Audenreid's Appeal.]

Audenreid, at that time, on as favorable terms as those on which he claims to have sold and assigned his interest to him.

"This broad and emphatic denial of so much of the case of the plaintiffs as rests upon the allegations of fraudulent conspiracy, must be considered as conclusively answered, unless the evidence taken in the cause sustains the charge; and it can only be established against the defendants by the testimony of two witnesses, or by the testimony of one witness and corroborating circumstances. The plaintiffs must bring their case within the well-established equity rule that where the defendant in express terms negatives the allegations of the bill, and the evidence of one person only affirms what has been so negatived, then the court will neither make a decree nor send it to a trial at law: Danl. Ch. Pr. & Pl. 983. Nor would the cause be sent to a trial at law unaccompanied by instructions as to the requisite amount of proof to sustain a verdict, contrary to the positive denial of the answer. And the operation of the defendant's answer is the same, although the equity of the plaintiffs' bill is grounded on the allegation of fraud: Dilly *v.* Barnard, 8 Gill & Johns. 171; McDonald *v.* McLeod, 1 Ired. 226; Lewis *v.* Owen, Id. 290; Murry *v.* Blatchford, 1 Wend. 583; Cunningham *v.* Freeborn, 3 Paige 557; Hart *v.* Ten Eyck, 2 Johns. Ch. 92.

"Several of the English authorities, and among them the case of Gibson *v.* Russell, 2 You. & Col. 104, were cited in support of the claim that in a case like the present one, the burden of proof is thrown upon the defendants. Gibson *v.* Russell, is, in many respects, like the one now before us. A deed of gift of real estate from an aged and infirm person to his intimate friend and medical attendant, was set aside for fraud, one of the circumstances in proof of fraud being that the deed stated, contrary to the proof, a money consideration. It was admitted, upon the hearing of that case, that although the deed recited a consideration of 1000*l.* that no money was paid by the grantee for the property, but that the grantor had furnished 1000*l.* of his own money to support a colorable payment by the grantee. In that case, however, the fact appeared that Gibson had been under insane delusions; this, in the opinion of the vice-chancellor, shifted the burden of proof, and required the defendant to establish first, that when Gibson executed the deed he was of sound mind; secondly, that he was at that time competent to transact such business; and thirdly, that he well understood the whole business, and needed no other advice respecting it than such as he had.

"The vice-chancellor found, as to each of these grounds, that the defendant had not established them by his proofs, and for this reason, and upon other considerations mentioned in his opinion, he set the deed aside.

This case, though strongly analogous to the present one in several of its most prominent facts, yet differs from it in the one which is most essential, and upon this distinction the decision of the vice-

chancellor is mainly founded.   Although it was shown that Mr. Audenreid had greatly failed in bodily health, and a number of witnesses testified that his mind was considerably impaired, the value of this testimony is greatly shaken by the fact, that these witnesses did not hesitate to advise and consult him upon business matters, but transacted important business with and for him during all the time covered by their testimony.   This is true of his partner, Mr. Potts, who, in October 1872, renewed his agreement of partnership with Mr. Audenreid; and it is equally true of Mr. Matthews and Mr. Geary, who were his business agents.   The great preponderance of the testimony on this point establishes the fact that his mental faculties were in no appreciable degree impaired. We think this is clearly made out by the testimony of his sister, Mrs. Miller, who was his constant attendant; by that of Mr. Krumbhaar, the secretary of the construction company; by Mr. Purves, who transacted important legal business with him in May 1873; by Mr. Gest, who was his legal adviser, whose testimony covers the time extending from April 1872 to June 1875; by Dr. Ludlow, his consulting physician; and by his spiritual adviser, the Rev. Mr. Romich.   The testimony also shows that Mr. Audenreid was possessed of a great business capacity; he was shrewd and keen at a bargain, and had a clearness of mental vision in all matters relating to business much above the average.

"The burden of proof in this case is not shifted upon the defendants; for here the denial is most positive; and it is, as a general rule, only where the answer of the defendant is not responsive to the bill, but sets up affirmations in opposition to, or in avoidance of the plaintiff's demand, and is replied to by the plaintiff, that the answer is of no avail in respect to such allegations.   In such a case the defendant is as much bound to support his affirmative averments by independent testimony, as the plaintiff is to sustain his bill: Daniel's Ch. 984 note.

"Every allegation of fraud in equity as well as at law, unless it is admitted, or not denied when denial is required; or unless where, from the character of the answer, or from some other cause, such as temporary insanity, the burden of proof is shifted, must be established by proofs.   The party who alleges fraud, must, as a general rule, establish the fraud upon which his equity or legal right rests.

"Recognising this necessity, the plaintiffs have resorted to their proofs, and it is due to the defendants to say that it entirely fails to support in any degree the charges of fraudulent combination between Forbes and Walker.   Nor is there a tittle of reliable testimony which shows that Dr. Forbes, by any word or deed, departed from the strictest rule of right in his connection with the subscription to the stock of the construction company by Audenreid, or that he influenced him or sought to influence him to make the subscription.

"The testimony of Mrs. Miller, to some extent relied on by plain-

[Audenreid's Appeal.]

tiffs, we do not think is of any weight.   She says Mr. Audenried first saw an account of the Southern Pacific Railroad in a newspaper, and spoke to Dr. Forbes about it, and when Mr. Audenried decided to take an interest in it, Dr. Forbes urged him to take his nephew or his partner in with him.   Speaking of the doctor's connection with the stock, she says, 'My *impression* is he had it under his control.   I dare say he got it from Walker.   *I don't know anything about it.*'

"When this conclusion is reached after a careful examination of the plaintiff's testimony, and is weighed along with the most full and emphatic denial of all the charges of wrongdoing which are made against Forbes by the plaintiffs in their bill, accompanied by a statement which Dr. Forbes gives of his part in the transaction, we would be ready to dismiss the bill as to him but for the necessity which remains to consider the legal effect of the agreement between Forbes and Audenreid.

"It is contended on behalf of the plaintiffs that the consideration recited in the deed to Forbes is binding on him ; that he cannot now deny it and claim that the stock was bestowed on him as a gift.   In support of this proposition a number of authorities were cited, but these cases cannot be regarded as of authority in Pennsylvania since the decision of Jack *v.* Dougherty, 3 Watts 157, where it is ruled that parol evidence may be admitted to prove a consideration other or greater than that which is expressed in the deed, to rebut the presumption of fraud, if it be not flatly contradictory to that mentioned in the instrument.   And where a deed states a consideration when none in fact was paid, it was held that the question of fraudulent intent was properly not decided by the court, but left as a question of fact for the jury.   Judge KENNEDY, delivering the opinion of the court, reviews the English authorities, and cites a number of New York cases, in which the doctrine now contended for was recognised.   He holds and attempts to show that the rule prior to the case of Clarkson *v.* Hanneay, 2 P. Wms. 203, was not only held to be different, but has, in some instances, been considered so since the date of most of the cases referred to.   In Virginia it is held that in equity either party may prove the true consideration of a deed, though different from that expressed in it : Duval *v.* Bibb. 4 Hen. & Munf. 113.   In Harvey *v.* Alexander, 1 Rand. 219, it was decided that where the deed was made in consideration of natural love and affection, and the further consideration of $1, parol proof was admissible of other valuable considerations. The same doctrine was recognised by the Supreme Court of Massachusetts, in Bullard *v.* Briggs, 7 Pick. 533.   White *v.* Weeks, 1 P. & W. 486, supports this principle.   Judge KENNEDY remarks, it frequently happened that but little regard was paid by the parties to the consideration set forth in the deed, leaving it to the scrivener to put in such of it as in law he might deem sufficient to make

the deed operative.   The consideration being thus inserted rather to meet the exigency of the law than the whole truth of the case, parol evidence ought to be admitted to show the true consideration of the deed.

"The rule established by Jack v. Dougherty is, that it being only a ground for presumption, and not for construction, it is capable of being removed by parol evidence.

"Lewis v. Brewster, 7 P. F. Smith 410, adopts the doctrine established in Jack v. Dougherty, and quoting from the opinion of Judge KENNEDY with approval, it decides that if a deed appears to be a voluntary conveyance, a valuable consideration may be proved by parol, and that which appears to be a valuable consideration may be proved in the same manner to be a gift for good consideration.   The deed in that case recited a consideration of $300.   The testimony was that nothing was paid; the scrivener said: If I understood the grantor, it was a gift to his daughter-in-law.   Another witness said there was no money consideration for the deed— none paid or expected ; it was wholly a gift.

"This doctrine is also supported by Buckley's Appeal, 12 Wright 491, and in Greenl. Ev., §§ 285 and 304.

"Dr. Forbes, in his answer, says the offer or proposition to give him an interest in the stock was made by Mr. Audenreid; that in reply to a question as to how much of the stock, he, Audenreid, would carry for him on his notes, he replied that he would not carry any, but that he had intended to give him one-fourth of his part, and that he would get his clerk, Mr. Robb, to draw up a paper to that effect ; that after further conversation the doctor suggested that in a matter of so much importance he had better get a lawyer to draw up a legal and proper paper, and that he saw Mr. George Bull, who was of counsel for Mr. Walker, who prepared the agreement which was afterwards signed by Mr. Audenreid.

"Mr. Bull testifies that the consideration he inserted in the agreement was not inserted in consequence of any instruction he received from Dr. Forbes, or any one else; that the paper was intended to secure to the doctor an interest of $50,000, which he obtained as a gift, and as he knew that no present interest was to pass to the doctor, and that unless the contract had some consideration to support it, it was subject to revocation for greater caution he inserted the consideration recited in the agreement; that it was wholly upon his advice and at his suggestion that this was done.   All this the answer asserts was explained to Mr. Audenreid, and that it was after explanation that he approved of and signed the contract.   This, we think, ought not to be questioned, in view of the fact that in July following, eight months after the date of the agreement, he delivered to Dr. Forbes, by the hands of his confidential clerk, Mr. Robb, one of the plaintiffs, thirty $1000 bonds, having also, in May preceding, transferred in trust $100,000 of the construction bonds,

the interest and principal being made subject to the direction of Dr. Forbes, for hospital purposes in Philadelphia. The reasonable explanation of the generosity of Mr. Audenreid, and his desire to benefit Dr. Forbes, is, that he felt himself under great obligation to him for important professional services which the doctor had rendered to him, and who also stood in the relation to him of a personal friend. This is to be considered in connection with the fact, that Mr. Audenreid was a gentleman of very large wealth, to whom a gift large in amount as this is would bring no sensible diminution of fortune, and it is also to be borne in mind that he expected to pay it out of the profits which he anticipated he would realize upon his investment in the stock of the construction company. The expectation of the promoters of the enterprise, and of the subscribers, was that it would rise to double its original value in a short time.

" Upon the allegations of undue influence we think the·plaintiffs have wholly failed upon their proofs. There is no such charge established against any one under the law as it is settled in Pennsylvania; a jury would be instructed to find against the plaintiffs upon their testimony upon this point, in a trial of an issue of *devisavit vel non*. It bears only, and that in a very slight degree, against Mrs. Miller, the sister of the deceased, who is no party to these proceedings.

" Nor can we agree with the plaintiffs that there is anything in the confidential relation of a medical adviser to a patient that *per se* forbids the acceptance of a gift by him from his patient. Greenfield's Estate, 12 Harris 232, decides that there is no rule of law or of morals which prevents a minister of the gospel from receiving gifts, large or small, from his parishioners or from strangers. In that case, Mrs. Greenfield, who was old and infirm, gave to the Rev. William Suddards a sealed note for $6000 for " value received and for his services;" the services were of a spiritual character, visits made at the request of Mrs. Greenfield to persons who were objects of her care and solicitude. This case rules the law upon this point against the plaintiffs; the relation of a spiritual adviser being closer, more confidential, and more influential in controlling the action of an aged and infirm person than that of a medical attendant. Greenfield's Estate also supports the doctrine that inquiry may be made as to the consideration recited in a deed or sealed instrument; the court hold, notwithstanding the valuable consideration mentioned, and that the note was under seal, which imports consideration, that it was to be regarded as a gift.

" Upon the whole case, therefore, as it stands upon the law applicable to and governing it, and upon the pleadings and the proofs, we are required to dismiss the bill as to William S. Forbes; the costs as to him to be paid by the plaintiffs, and we so order."

[Audenreid's Appeal.]

The prayer of the bill as to Walker was granted, the court, inter alia, saying:

"The agreement upon which Walker depends in defending against the claim of the plaintiffs, we are required to hold is void, because it claims to transfer to Audenreid that which Walker did not at the time possess. He was not possessed of a share, or of four-fifths of one undivided interest or original share of the capital stock of the construction company; nor had he, as is stated in the contract, secured such stock for himself or his assigns. This being the whole consideration for the undertaking of Audenreid, it is, as to him, without any consideration to support it, and therefore not binding upon him. This, in connection with the reasons already stated, leads us to the conclusion that the relief prayed for in the second, third and sixth prayer for relief should be granted as against Walker, and it is so ordered."

From the decree dismissing the bill as to Forbes, this appeal was taken

*A. Sydney Biddle* and *R. C. McMurtrie*, for appellants.—The contract which Walker got from Audenreid was a fraud upon the latter. This contract was negotiated through the agency of Forbes. Walker pretended to control certain property, and Audenreid contracted on the faith of that belief. This fact was stated in writing, and Forbes carried it to his principal, knowing its contents and their falsity.

Unless Forbes's answer is alone sufficient to overcome this proof, we submit the proof of combination is made out. Supposing it is not proved, then the defendant holds, under a contract, property which belonged to a man now dead, which sets forth as the consideration that which is utterly untrue and never existed.

The defendant holds this property under a sealed contract. It is an executory contract to convey. It recites a consideration. A consideration is essential to such a contract, it being executory. No one pretends to know or state any fact as to the other party to that contract but the defendant. He is incompetent as a witness. We therefore respectfully submit: No one claiming under a deceased person by contract as for value can be permitted to avoid the effect of proof that this was untrue by setting up that such contract was really a gift. If he can he must prove it and his answer is no evidence for him.

It is evidently most inconsistent to permit a man to clothe himself with the strongest muniments of title and upon it being shown that all this is a fraud and untrue to claim the property as a gift. It seems very difficult for men to devise a form of evidence that will preserve them from fraud and imposition if this be the rule. This becomes still more apparent if we apply it to cases such as this where one party is aged, incapable of acting with the

[Audenreid's Appeal.]

energy of men in active life, confined to his house, and compelled to act through agents. And it culminates when death has closed all means of obtaining explanations. The authorities are: Bridgman *v.* Green, 2 Vesey 628; Huguenin *v.* Baseley 14 Id. 278; Dent *v.* Bennett, 4 Myl. & Cr. 269; Uppinglin *v.* Bullen, 2 Dr. & War. 184 (Sugden Ch.); Gibson *v.* Russell, 2 You. & Col. 120; Dent *v.* Bennett, 7 Sim. 539.

As between parties where written instruments are appointed by the law or by the compact of the parties to be the repositories or memorials of the truth they are the only evidence of what was agreed to; Starkie Evidence (Sharswood ed.) 648, 651, 655; and see Hendrick *v.* Croly, 31 Cal. 471.

Can a party prove title by gift from one deceased, when he takes under a deed purporting to be for value? Defendant has not done so. He asserts it, but gives no proof. There is none pretended but his answer, and that only asserts an intention to give, changed after negotiation. That answer is not responsive; it is in confession and avoidance. But the rule as to responsive allegations has no place in such matters. They are never admitted to vary a right or fact proved by a document, or to vary its effect.

As to the irresponsiveness of the defendant's assertions in his answer of a different consideration from that averred in the bill, see Jones *v.* Belt, 2 Gill. 106–120; Randall *v.* Phillips, 3 Mason 387; Cocke *v.* Trotter, 10 Yerg. 215; Ives *v.* Harris, 4 R. I. 413; Flagg *v.* Mann, 2 Sum. 486; Dease *v.* Moody, 31 Miss. 617; Clarke *v.* White, 12 Peters 178; Wynans *v.* Wynans, 19 N. J. 220; McDonald *v.* McDonald, 16 Vt. 631; Eaton's Appeal, 16 P. F. Smith 485; Fisler *v.* Porch, 2 Stockton Ch. 243. The cases cited by the court below are distinguishable from the one at bar.

The donee, where he stands in any confidential relation to the donor, must satisfy the court on a bill brought to set aside the gift, that the donor has had competent and independent advice in conferring the benefit, and that no undue influence has been practised. The confidential relation then shifts the burden of proof. The rule is independent of age, sex, mental infirmity or other incapacity: Rhodes *v.* Bate, Law Rep. 1 Ch. App. 252; Huguenin *v.* Baseley, *supra;* Popham *v.* Brooke, 5 Russ. 8; Lyon *v.* Home, Law Rep. 6 Eq. 655; Greenfield's Estate, 2 Harris 489; Wright *v.* Vanderplank, 8 DeGex, M. & G. 137; Taylor *v.* Taylor, 8 How. 183; Todd *v.* Grove, 33 Md. 188; Boney *v.* Hollingsworth, 23 Ala. 698; Cadwalader *v.* West, 48 Mo. 483; Crispell *v.* Dubois, 4 Barb. 393; Brice *v.* Brice, 5 Id. 533; Wheeler *v.* Wheeler, 43 Conn. 803; Highberger *v.* Stiffler, 21 Md. 338; Meek *v.* Thornton, Executors, *v.* Perry et ux., 36 Miss. 244; Lake *v.* Ranney, 33 Barb. 68; Bergen *v.* Udall, 31 Id. 9; Garvin *v.* Williams, 44 Mo. 465.

Independent of fraud no title passed, as the conveyance was void.

[Audenreid's Appeal.]

This bill is also to obtain restitution of property conveyed by a deed which was void for want of consideration. The proceeding is by the grantor himself or those immediately representing him. In all the cases cited by appellee the convevance was attacked by strangers or third parties.

*P. McCall*, for appellee.—No rule that a deed cannot be set up as a gift when it purports to be for value obtains in this state: Jack *v.* Dougherty, 3 Watts 157; Lewis *v.* Brewster, 7 P. F. Smith 410; Duvall *v.* Bibb, 4 Hen. & Munf. 113; Greenl. on Ev., § 304, citing 2 Coll. Ch. 76. The answer is responsive: Eberly *v.* Groff, 9 Harris 251. The bill charges that Forbes secured this contract by fraud and false pretences. Everything that shows fairness in the transaction is responsive to the bill. The plaintiffs state a transaction as the foundation of their equity. The defendant has a right to state the whole of such transaction as it really was. Gifts to a medical adviser do not stand on the same footing as gifts from a client to an attorney, which are set aside on grounds of public policy, or transactions between ward and guardian, *cestui que trust* and trustee: Greenfield's Estate 12 Harris 232; Jackson *v.* Ashton, 11 Pet. 229; Doggett *v.* Lane, 12 Mo. 215. The bill did not allege that Mr. Audenried was of weak intellect; on the contrary the testimony showed that he was of sound mind and strong will, and not of a facile disposition.

The judgment of the Supreme Court was entered March 17th 1879,

PER CURIAM.—A careful examination of the proofs and consideration of the able arguments, oral and printed, of the learned and zealous counsel for the appellants have failed to convince us that there was any error in the decree appealed from. The opinion of the learned president of the court below so clearly expresses the views we entertain of the case that we deem it unnecessary to add anything.

> Decree affirmed, and appeal dismissed at the costs of the appellants.