403 A.2d 982

**In the Matter of the ESTATE of Boies PENROSE, Deceased.**

**Appeal of R. & R. INVESTMENT CORPORATION, Appellant.**

Supreme Court of Pennsylvania.

Argued April 26, 1979.

Decided July 5, 1979.

Reargument Denied Aug. 6, 1979.

Herbert J. Bass, Fox, Rothschild, O'Brien & Frankel, Israel Packel, Philadelphia, for appellant.

John G. Shea, Bryn Mawr, for appellees, Charles B. B. Penrose, et al.

Dallett Hemphill, West Chester, for appellees, First Pa. Bank, et al.

Noah D. Cutler, Radnor, for appellee, James W. Keeley, Jr.

Israel Packel, Philadelphia, for R. & R. Investment Corp.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO and LARSEN, JJ.

OPINION OF THE COURT

ROBERTS, Justice.

Boies Penrose died on February 27, 1976. His estate included real property in Chester County consisting of his residence, other improvements, and forty-four acres of land. On June 30, 1977, the executors of his estate entered into a written agreement for the sale of the realty to the R. & R. Investment Corporation ("R. & R.") for $512,500. The agreement of sale was subject to several conditions including governmental approval of a subdivision plan, the issuance of building permits, and the availability of a 98% four-year mortgage at a rate of interest not to exceed 10%. The agreement also expressly provided that the sale was contingent upon the approval of the orphans' court.

On July 8, 1977, the executors filed a petition for approval of the sale to R. & R. in the Court of Common Pleas of Chester County, Orphans' Court Division. Charles Penrose and Frances Penrose Haythe, the son and daughter of decedent who share a life interest in his estate, objected to the proposed sale claiming inter alia that the executors were in receipt of a more favorable offer from James Keeley. Keeley offered to purchase the realty for $550,055, subject to a subdivision contingency but not a mortgage contingency. After an evidentiary hearing the court on July 29 refused to approve the sale to R. & R. Its decree fixed August 2, 1977, as the date on which the court would receive additional bids for the property and directed that the property would be "knocked down to that bidder making the highest, least conditional offer accompanied by a deposit equal to five percent of the bid price." In the court proceeding, the Barbados Hill Corporation ("Barbados"), a company owned entirely by Charles Penrose, made a bid of $543,052.80 without mortgage or subdivision contingency. On August 2, 1977, the court determined that this was the best bid and upon the conclusion of the "auction," the executors entered into an agreement of sale with Barbados. On the same day the executors filed a motion requesting the court's approval of the proposed sale and on August 3, 1977, the court approved the sale.

R. & R. filed this appeal from the July 29 and August 3 decrees contending that the court's disapproval of the proposed sale to it and the court's approval of the sale to Barbados were both in error. R. & R. argues that the court's rejection of the R. & R. agreement was improperly based upon a consideration of a higher offer which, R. & R. claims, arose after the execution of the agreement with R. & R. Additionally, R. & R. complains that the orphans' court was without authority to order an auction of the property. The executors and Charles Penrose, appellees, argue that the orphans' court acted properly both in refusing to approve the agreement with R. & R. and in approving the sale to Barbados.

Our review satisfies us that the court properly exercised its discretion and committed no error of law in disapproving the R. & R. agreement of sale and in approving the sale to Barbados. We affirm the decrees of the orphans' court.

■ The decedent's will conferred upon his executors express powers in their sole discretion "to sell at public or private sale, for cash or credit, with or without security, to exchange or to partition real or personal property and to give options for sales or exchanges." The testamentary grant to the executors of the express power to sell relieved them of any requirement to obtain court approval of a sale of estate property. Nonetheless, the executors were not precluded from including in the R. & R. agreement a provision making the sale of the estate realty subject to approval of the orphans' court. E.g., *Stone Estate*, 358 Pa. 335, 56 A.2d 664 (1948). Upon submission of the agreement to the court, it was for the court to determine whether the proposed sale was in the best interests of the beneficiaries under the decedent's will. *Curtis Estate*, 437 Pa. 123, 261 A.2d 589 (1970).[1]

1. In *Curtis Estate*, supra, the Court aptly described this standard in a case involving the sale of trust property: "the only reason that the court becomes involved at all in these matters is to protect the beneficiaries' interest in seeing that the trustees discharge their duties faithfully and in the best interests of the trust." Id., 437 Pa. at 129, 261 A.2d at 593.

Here, after a hearing, the orphans' court found that "[t]he R. & R. agreement for which initial approval was sought was not in the best interests of the Penrose estate." The court found that the higher Keeley offer was made before execution of the R. & R. agreement, that the executors failed to give the Keeley offer due consideration, and that the estate was harmed by having lost the opportunity to consider that offer. R. & R. asserts that the Keeley offer arose after the R. & R. agreement and should not have been considered by the orphans' court in reviewing the petition to approve the sale to R. & R. Competent and adequate evidence, however, supports the court's conclusion to the contrary.[2] We may not disturb findings of fact of the

2. The orphans' court opinion recites that Keeley had on June 27 or 28 expressed his interest in the estate property to the executors. On June 30 Keeley requested a meeting with the executors. He was told, however, that the executors were meeting with another prospective purchaser and that they could see him no earlier than 5:00 p. m. When Keeley arrived he orally informed the executors of his offer and said that he was awaiting an associate who would bring the written offer. The court's opinion states:

"The executors told Keeley that they would give him exactly fifteen minutes, failing which they would deal with another customer. The colleague arrived about eight minutes after the deadline, by which time, Mr. Whelan [the president of R. & R.] came out of the house to tell Keeley that a deal had been 'signed, sealed and delivered.' As a result, Keeley was prevented from making an offer and decamped. In fact, the agreement had not been 'signed, sealed and delivered' as Whelan had claimed. It was not signed by the proper officers of the corporate fiduciary until the next business day."

The orphans' court states in its opinion that the original Keeley offer was $555,000 and that the realtor's commission was six percent to be deducted from the purchase price. The record reveals, however, that the Keeley offer was $550,055 and that the realtor's commission was seven percent. No party on this appeal has raised this apparent discrepancy. Even accounting for the discrepancy, however, the record sustains the court's conclusion that the Keeley offer was superior and that the executors did not afford it due consideration.

The orphans' court was also cognizant of the sentimental interest of the heirs in purchasing the property and of the significant contingencies in the R. & R. agreement, which the heirs argued constituted the grant of an option without consideration. The R. & R. agreement contains the following clauses:

"1. It is mutually understood and agreed that within Fourteen working days from the date hereof, Buyer will prepare and file a

orphans' court which are "supported by competent and adequate evidence and are not predicated upon capricious disbelief of competent and credible evidence." *La Rocca Trust*, 485 Pa. 236, 401 A.2d 746 (1979) (quoting *Cohen Will*, 445 Pa. 549, 550, 284 A.2d 754, 755 (1971)). The court's disapproval of the sale to R. & R. must therefore be sustained.[3]

> written application with a recognized mortgage lending institution for a . . . mortgage loan to be secured upon the property in the amount of $500,000.00 for a term of not less than Four years at an interest rate not to exceed Ten PerCent to enable Buyer to finance the purchase of this property.
>
> *     *     *     *     *     *
>
> 16. A. Buyer's obligation under this agreement is contingent upon obtaining whatever final unappealable permits, licenses, consent and approvals of whatsoever kind or nature may be necessary in order to develope the property for Twenty-One (21) detached single family dwellings (including the existing two dwellings as part of the total of Twenty-One, including but not limited to conform to the existing subdivision ordinance Article # 13, (special regulations for lot averaging) sub-division approval, building permits, approval by the Department of Environmental Resources, the Pennsylvania Department of Transportation and all other authorities having jurisdiction. Buyer's obligation under this agreement is also contingent upon on [sic] the availability of all utility services and the approval of all governmental agencies or other parties to permit the extension of all utility lines and all connections therto [sic].
>
> *     *     *     *     *     *
>
> 25. This agreement is contingent upon seller finalizing any and all agreements, contracts, and whatever else may be necessary so as to provide buyer with the necessary sewer facilities so that buyer may install a sanitary sewer line for the sole purpose of connecting all units to be built upon the proposed subdivision with the necessary governmental approvals as set forth under Paragraph # 16 of this agreement."

3. Any suggestion that section 3360(a) of the Probate, Estates and Fiduciaries Code, 20 Pa.C.S.A. §§ 101 et seq., precluded the court's consideration of the Keeley offer in determining whether to approve the R. & R. agreement is without legal or factual basis. Section 3360(a) provides:

> "When a personal representative shall make a contract not requiring approval of court, or when the court shall approve a contract of a personal representative requiring approval of the court, neither inadequacy of consideration, nor the receipt of an offer to deal on other terms shall, except as otherwise agreed by the parties, relieve the personal representative of the obligation to perform his contract or shall constitute ground for any court to set aside the contract, or to refuse to enforce it by specific performance or otherwise  .  .  .."

If the órphans' court had merely disapproved the R. & R. agreement, as it had the authority to do on the record before us, no further discussion would be necessary. However, after entering the decree disapproving the R. & R. sale, the court established a procedure by which an offer better than that of R. & R. might be obtained. As noted earlier, the court directed that on August 2, 1977, those wishing to bid on the estate property must do so at an auction to be conducted by the court. R. & R. argues that the court had no authority to direct and conduct this proceeding.

At the auction on August 2, prior to receiving any bids, the court announced that the bidder whose bid was accepted by thé court would be required immediately to present its offer in writing. Bids from Keeley, R. & R. and Barbados were received by the court. The Barbados bid of $543,052.80 was equal in face amount to a bid from R. & R. but, unlike the R. & R. bid, contained no mortgage or subdivision contingency. Because this price was not subject to any

In *Curtis Estate,* supra, this Court stated:
"The Act of May 24, 1945, P.L. 944, 20 P.S. §§ 818, 819 [now section 3360], specifically addresses itself to situations in which it appears after approval that a higher price could have been obtained, and it forbids any withdrawal of approval for such a reason. Absent a showing of a lack of integrity in the judicial process which led to the approval, the approval, once given, is final and binding."
437 Pa. at 129, 261 A.2d at 593. Here prior to court approval and before execution of the R. & R. agreement another offer arose. That offer was properly considered by the court in evaluating the best interests of the beneficiaries.

R. & R. claims also that the orphans' court erred in permitting James Keeley to be a party in any of the proceedings below because a "subsequent" bidder has no standing to oppose a petition for approval of estate property. Although we again point out that the court found the Keeley offer was not subsequent to the execution of the agreement with R. & R., Keeley's participation as a party in any event has no bearing on the merits of the issues before us. It is sufficient that the evidence of the Keeley offer was relevant to the court's determination whether the R. & R. agreement was in the estate's best interests. Keeley did not receive the estate property as a result of its participation in the proceedings and is not now a party in this appeal. The contention of R. & R. that without Keeley's participation as a party "there would have been no higher offer and the court would have had no alternative but to approve the contract of sale with R. & R." is without factual support and must be rejected.

realtor's commission, the net gain to the estate over and above the sale price in the June 30th R. & R. agreement, which would have been reduced by a realtor's commission, was $61,302.80. As earlier noted, the court accepted the Barbados bid, the executors and Barbados entered into an agreement of sale, and upon the motion of the executors the court approved that agreement.

■ On this record it is unnecessary to pass on the court's authority to direct and conduct an auction for the sale of the estate realty. Even if the auction proceeding were deemed to constitute a procedural defect, that would not justify disturbing the sale to Barbados. See Section 1, R. 2, S.Ct. Orph.Ct.R. Here the executors indisputably possessed the power to enter into the agreement with Barbados. No objection to that sale was ever interposed by any party having a beneficial interest in the estate. The orphans' court after hearing and consideration approved the sale and the record discloses that in doing so it committed no abuse of discretion or error of law.

The decrees of the orphans' court are affirmed. Appellant to pay costs.