616 A.2d 1023

In re ESTATE OF Emmett B. LAZARUS, Sr., Deceased.

Appeal of NORTH FORK, INC., Appellant.

Superior Court of Pennsylvania.

Argued July 29, 1992.

Filed Nov. 17, 1992.

---

10. Specifically, our interest was to warn individuals not to drive in Pennsylvania during the suspension.

380

Sean P. Flynn, Norristown, for appellant.

Anthony D. Giannascoli, Plymouth Meeting, for Lazarus, participating party.

Joseph A. Fitzpatrick, Jr., Allentown, for Stabler Development, participating party.

Before MONTEMURO, FORD ELLIOTT and CERCONE, JJ.

FORD ELLIOTT, Judge:

This is an appeal from the December 13, 1991 Final Decree of the Court of Common Pleas of Lehigh County, which failed to approve the Agreement of Sale between the Executor of the Estate of Emmett B. Lazarus and North Fork, Inc. The Final Decree did authorize the Executor to proceed to closing under the terms of an Agreement of Sale with Stabler Development Company. After carefully considering the arguments raised by appellant, North Fork, Inc., we affirm the Final Decree issued by the trial court in this matter.

A detailed recounting of the factual background of this case is necessary in order to address the issues raised before this court.

Emmett B. Lazarus, Jr., is the Executor of both the Emmett Lazarus Estate and the Pearl Lazarus Estate. Each estate owns an undivided one-half interest in two adjoining parcels of real estate located in North Whitehall Township, Lehigh County, Pennsylvania.

On June 26, 1991, Emmett B. Lazarus, Jr., as Executor of the Estate of Emmett Lazarus, and pursuant to a Power of Attorney granted him by Pearl I. Lazarus,[1] executed an Agreement of Sale with North Fork, Inc., for the two parcels of land situated in North Whitehall Township. The agreement provided for a $600,000.00 purchase price to be paid accordingly: $200,000.00 to be paid on or before final settlement and the remaining $400,000.00 to be paid monthly in the form of a purchase money mortgage over a two-year period, at an interest rate of 9% per annum, with a balloon payment due at the end of the two-year period. Paragraph 6(c) of the Agreement provided that: "this Agreement is specifically condi-

---

1. Pearl I. Lazarus was alive when the two sales agreements were entered, and at the time of the Orphans' Court hearing. Her interests were at all times represented by Emmett B. Lazarus, Jr., pursuant to a Power of Attorney. Pearl I. Lazarus subsequently died on January 1, 1992, at which time Emmett B. Lazarus, Jr., was appointed Executor of her estate.

tioned upon Seller obtaining Court approval of this sale and the above-mentioned Purchase Money Mortgage."

Upon learning that Stabler Development Co. was also interested in Purchasing the land, North Fork, Inc. agreed to increase its offer to $625,000.00. The parties also agreed to modify some of the terms of the sales agreement; however, the agreement was still expressly conditioned upon sellers obtaining court approval.

Once Stabler Development Corporation learned that North Fork had entered into an Agreement of Sale with Emmett B. Lazarus, Jr., for the purchase of the North Whitehall Township property, it also submitted an Agreement of Sale to the executor for the purchase of the subject property. The Stabler Development Corporation offer provided for a purchase price of $650,000.00, to be paid accordingly; $300,000.00 due on or before settlement, and the remaining $350,000.00 to be paid monthly in the form of a purchase money mortgage at an interest rate of 9.5% per annum. The monthly payment would be larger than the monthly payment under the North Fork offer, as there was no balloon payment provision under the Stable Development offer. The Stabler Development Corporation Agreement of Sale, like the North Fork Agreement, also called for approval by the Orphans' Court.

Upon learning that North Fork had increased its offer to $625,000.00, Stabler Development Corporation delivered to counsel for Executor an Addendum to the Agreement for the Sale of Real Estate. The Addendum called for an increased purchase price of $750,000.00. The Addendum also provided the sellers with options as to the time and manner in which they would receive payments under the purchase money mortgage. Finally, the Addendum provided that Stabler Development Corporation would pay any rollback taxes owed on the properties.

On November 21, 1991, the Estate of Emmett B. Lazarus, Sr., filed a petition in the Court of Common Pleas of Lehigh County, Orphans' Court Division, seeking approval of the sale of the North Whitehall Township property to North Fork, Inc.

On November 27, 1991, Stabler Development Corporation filed a petition with the Orphans' Court seeking approval of its Agreement of Sale for the same real estate. The Orphans' Court set a hearing date to consider both petitions.

The Honorable Robert K. Young held a hearing on both petitions on December 5, 1991. At the hearing, beneficiary Robin L. Lazarus, a mentally incapacitated adult, was represented by her Guardian *ad litem*, an attorney appointed by the Orphans' Court. Beneficiary Sharon Hilbert appeared *pro se* at the hearing. All other parties were represented by counsel. At the hearing, the Estate modified its petition and requested that the Orphans' Court approve the sale to Stabler Development Corporation.

On December 13, 1991, Judge Young issued a *decree nisi* refusing to approve sale of the real estate to North Fork, Inc., and approving sale of the real estate to Stabler Development Corporation. Post-trial motions were subsequently denied by order dated January 2, 1992. The *decree nisi* was converted to a final decree. This timely appeal followed.

Appellant, North Fork, Inc., presently raises the following issue for our consideration:

Did the Orphans' Court commit an error of law in failing to approve the executed agreement for the sale of decedent's real estate to North Fork, Inc. for an amount far in excess of the appraised value when, in the absence of a showing of fraud, accident or mistake, the court was faced with a higher offer on different terms, which offer was forthcoming subsequent to the execution of the agreement of sale with North Fork, Inc.?

In addressing this issue it is important to focus upon Section 3360(a) of the Pennsylvania Decedents, Estates and Fiduciary Code, for it is the interpretation of this section which will ultimately resolve the present controversy.

Section 3360(a) provides in pertinent part:

(a) Inadequacy of consideration or better offer.—When a personal representative shall make a contract not requiring approval of court, or when the court shall approve a

contract of a personal representative requiring approval of the court, neither inadequacy of consideration, nor the receipt of an offer to deal on other terms shall, except as otherwise agreed by the parties, relieve the personal representative of the obligation to perform his contract or shall constitute ground for any court to set aside the contract, or to refuse to enforce it by specific performance or otherwise. Provided that this subsection shall not affect or change the inherent right of the court to set aside a contract for fraud, accident or mistake. Nothing in this subsection shall affect the liability of a personal representative for surcharge on the ground of negligence or bad faith in making a contract.

20 Pa.C.S.A. § 3360(a).

■ Appellant argues that the present situation falls within the parameters of section 3360(a), and is therefore controlled by the language in that section. Specifically, appellant refers to that part of section 3360(a) which prohibits a trial court from setting aside a contract for an offer to deal on other terms, as supporting its contention that the trial court erred in failing to approve its Agreement of Sale with Executor, and approving the Agreement with Stabler Development Corporation. Appellant relies upon *In re Estate of Hughes*, 517 Pa. 410, 538 A.2d 470 (1988), to demonstrate why the present situation is governed by section 3360(a), and why a proper application of the section can only lead to the conclusion that the trial court erred in this instance.

However, as appellees correctly note, *Hughes* is distinguishable from the present case; section 3360(a) has no application in this instance; and in light of the applicable case law, the trial court did not err in reaching its conclusion.

As appellees point out, section 3360(a) deals specifically with only two situations: (1) when a personal representative shall make a contract not requiring court approval, or (2) when a court has already approved a contract of a personal representative requiring court approval. The present case falls under neither category. The contract between the Executor and North Fork, Inc., does not fall into category one since the

contract did require court approval. While the second category under that section does deal with contracts requiring court approval, as did the North Fork contract, when read carefully, and in its entirety, it is clear that the type of situation falling within the second category of section 3360(a) is one in which an approved contract is subsequently set aside by a court in light of a later, better offer. Although somewhat awkwardly drafted, section 3360(a) is most succinctly interpreted by our supreme court in *Estate of Penrose*, 486 Pa. 9, 403 A.2d 982 (1979).

*Estate of Penrose* involved a factual situation similar to the present one. The executors of Boies Penrose's estate entered into a written agreement for the sale of forty-four acres of land to R & R Investment Corporation for $512,500. The sales agreement provided that the sale was contingent upon the approval of the orphans' court. The executors filed a petition to obtain such court approval. Subsequently, two of the beneficiaries objected to the proposed sale in light of a more favorable offer from James Keeley. Keeley offered to purchase the realty for $550,055 and without a mortgage contingency is his agreement. After an evidentiary hearing on the matter, the trial court refused to approve the sale to R & R Investment Corporation, and instead fixed a date the court would receive bids for the property. The property was sold at the auction to a third party. R & R appealed the trial court's order refusing to approve its sales agreement. The supreme court affirmed the order of the trial court, and in so doing, reaffirmed the exact parameters of applicability of section 3360(a) as previously established in *Curtis Estate*, 437 Pa. 123, 261 A.2d 589 (1970). In addressing the possible applicability of section 3360(a) to the case before it, the *Penrose* court stated:

Any suggestion that section 3360(a) of the Probate, Estates and Fiduciaries Code, 20 Pa.C.S.A. §§ 101 et seq., precluded the court's consideration of the Keeley offer in determining whether to approve the R & R agreement is without legal or factual basis.

. . . .

In *Curtis Estate,* supra, this court stated:

The Act of May 24, 1945, P.L. 944, 20 P.S. §§ 818, 819 [*now section 3360* ], specifically addresses itself to situations in which it appears *after approval* that a higher price could have been obtained, and it forbids any withdrawal of approval for such a reason. Absent a showing of a lack of integrity in the judicial process which led to the approval, the approval, once given, is final and binding.

437 Pa. at 129, 261 A.2d at 593. Here prior to court approval and before execution of the R & R agreement another offer arose. That offer was properly considered by the court in evaluating the best interests of the beneficiaries.

*Estate of Penrose* at 14–15, n. 3, 403 A.2d at 984–85, n. 3 (emphasis added).

Presently, we also are faced with a situation where, *prior* to court approval, another offer was presented to the executor. Clearly, in light of *Penrose, supra,* and *Curtis, supra,* the trial court did not err in evaluating the offers in light of the best interests of the beneficiaries and granting its approval accordingly.

 This interpretation of section 3360(a) becomes all the more cogent when one considers that, under established principles of contract law, the "court approval" clause in the sales agreement operates as a condition precedent. As defined by a noted authority on contracts, "the use of the term 'condition' is confined to an event, other than the mere lapse of time, that is not certain to occur but which must occur (unless the condition is excused) in order to activate an existing contractual duty." *Murray on Contracts,* § 99B, p. 539 (3d ed. 1990). Applying this definition to the North Fork sales agreement, it is clear that the agreement was conditional. The agreement provides that an event must occur; namely, that the Orphans' Court approve the agreement before any contractual duties arise. Furthermore, although this event must occur, it is not certain to occur. Court approval of the agreement is not *pro forma.* A key characteristic of a conditional contract is that the

condition is not certain to occur. If we were to adopt appellant's proposed interpretation of section 3360(a), the trial court would never be able to withhold approval of a conditional contract in the first instance. Such an interpretation would effectively nullify and render meaningless operative language in conditional contracts.

Rather, interpreting section 3360(a) as the supreme court has done in *Penrose, supra,* and *Curtis, supra,* is more in line with the language of the act itself. Section 3360(a) specifically provides that a better offer will not "constitute ground[s] for any court to set aside *the contract.*" Until the condition precedent is satisfied, no contractual duties arise. Thus, when presented with two conditional sales agreements, the trial court is well within its power to evaluate the agreements and grant its approval of one or the other. It is only then, *after* initial approval of the court has been granted, that section 3360(a) would come into play to prevent the court from setting aside a contract it has already approved.

Finally, it is because the *Hughes* case falls within the first category under section 3360(a) that it is controlled by that section, and consequently distinguishable from the present case. *Hughes* involved a situation wherein an administratrix entered into a sales agreement for the sale of a house. The agreement was subject to the approval of the Court of Common Pleas *of waiver or of posting bond.* Administratrix's brothers and sister subsequently petitioned the court to stay the sale as they were in receipt of a better offer. The trial court entered an order authorizing administratrix to accept the subsequent higher offer. Ultimately, on appeal, the supreme court concluded that the trial court violated section 3360(a) by setting aside a contract for the sale of real property of an interstate estate due to the existence of a higher offer. In reaching this conclusion the supreme court noted that this was not a sales agreement requiring approval of court.

The reference in this section [3360(a) ], to 'approval of the court' was not intended to apply to contracts like the

present which seek only to allow the administratrix to waive the posting of the bond.

*Hughes,* 517 at 413, 538 A.2d at 471, n. 2.

Thus, in *Hughes,* the trial court was presented with a petition to set aside a contract of a personal representative not requiring court approval. Clearly, under the language of section 3360(a) the trial court could only set aside such a contract for fraud, accident, or mistake; not, however, because of the existence of a subsequent higher offer. Such a situation is entirely different from the present one, wherein the trial court was presented with a conditional sales agreement which did require court approval before becoming a legally binding contract. Thus, because *Hughes* involves an entirely different scenario, one in which section 3360(a) is applicable, its reasoning cannot be used as precedent in the present case.

Rather, it is evident from *Penrose, supra,* and *Curtis, supra,* that the trial court was well within its power to take the measures it did in this instance. Consequently, we affirm the Final Decree issued by the trial court in this matter.

Order affirmed. Jurisdiction relinquished.

MONTEMURO, J., concurs in the result.