## Carson Estate.

Argued March 15, 1968.  Before MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*August L. Sismondo,* with him *Adolph L. Zeman, Robert L. Zeman,* and *Zeman and Zeman,* for appellant.

*Fred C. Houston, Jr.,* with him *John H. Davidson,* and *Houston, Houston & Donnelly,* for appellee.

OPINION BY MR. JUSTICE COHEN, August 6, 1968:

Two sisters, Hazel E. Carson and Bethel C. Lutz, resided together in Fallowfield Township, Washington County. Hazel Carson was a supervising principal and Bethel Lutz was a librarian in the Charleroi Area Schools. On October 16, 1959, Hazel entered the hospital and was subsequently discharged on November 7, 1959, it having been ascertained that she was suffering from incurable cancer. She remained at her home until her death on June 28, 1960.

On October 20, 1959, shortly after her admittance to the hospital, Hazel secured a signature card and transferred her checking account in the Western Pennsylvania National Bank from an account in her name alone to a joint account in the names of herself and her sister Bethel with right of survivorship.

On October 23, 1959, Hazel executed an application making her sister Bethel the named beneficiary of her

individual contributions to the Public School Employes' Retirement System. By document dated May 1, 1960, Hazel designated Bethel as beneficiary of all her retirement benefits, including her contributions as well as contributions made to the retirement fund by her employer and by the Commonwealth. The amount paid to Bethel as beneficiary under the retirement system was $31,913.93.

On November 16, 1959, Hazel executed a form for the reissuance of Series "E" United States Savings Bonds, having a maturity value of $20,400, changing the ownership from herself to herself or Bethel with right of survivorship. This transfer was effectuated in the presence of an officer and employee of the Western Pennsylvania National Bank.

On May 14, 1960, Bethel drew two checks on said joint checking account—one in the amount of $15,000 in payment for United States Savings Bonds having a maturity value of $20,000, which bonds were then registered in the names of Hazel or Bethel with right of survivorship, and the other for $10,500 in payment for 300 shares of common stock of Western Pennsylvania National Bank which stock was also registered in the names of Hazel or Bethel with right of survivorship.

Hazel died testate naming her two surviving sisters, Bethel and Marjorie C. Rist as co-executrices of her estate. An inventory and later a first and partial account for distribution was filed by Bethel. Mrs. Rist refused to join in the filing, claiming that the Inventory and Account should have included the following assets in decedent's estate: (1) the balance in the joint checking account in the amount of $10,616.08; (2) the United States Savings Bonds having a maturity value of $20,000 and 300 shares of common stock of Western Pennsylvania National Bank; (3) the United States

Savings Bonds having a maturity value of $20,400 owned by decedent and reissued jointly to Hazel or Bethel; (4) the sum of $31,913.93 paid to Bethel as beneficiary of decedent's retirement funds.

Mrs. Rist requested that her co-executrix, Bethel, be surcharged for losses to the estate by reason of her failure to include said items in the inventory and account. This claim was predicated upon the assertion that Bethel stood in a confidential relationship to the decedent, and that she used her position to the disadvantage of decedent, and exercised undue influence upon her in an attempt to acquire ownership of decedent's assets.

The lower court found that a confidential relationship existed from about the middle of November to the date of decedent's death, and that Bethel had not met the burden of proof required of her to show that the purchase of said securities was free of taint, fraud, and abuse of her confidential relationship with the decedent. The lower court further held that when a joint tenant, without the consent of the other joint tenant, makes a very large withdrawal from a joint account, this action terminates the joint tenancy and creates a tenancy in common. On the basis of this reasoning, the lower court held that: (1) the creation by Hazel of a joint checking account between herself and Bethel on October 20, 1959, was a valid gift inter vivos; (2) the portion of the Public School Employes' Retirement Fund which consisted of individual contributions by Hazel was properly paid to Bethel as the duly designated beneficiary, but that the portion of the fund attributable to the contributions of her employer and the Commonwealth should be awarded to the estate of the decedent since the latter occurred during the period of confidential relationship; (3) the reissued U. S. Savings Bonds having a maturity value of

$20,400 should be returned to the estate along with any income received thereon, since this transaction also occurred during the period of confidential relationship; (4) one-half of the U. S. Savings Bonds having a maturity value of $20,000 and one-half of the 300 shares of common stock of Western Pennsylvania National Bank were to be held in constructive trust for the benefit of decedent's estate, and (5) Bethel was to further account for one-half of all income received thereon, including stock splits, etc., from the date of purchase to the date of accounting. The lower court further ordered that Bethel be entitled to one-half of the remaining funds in the joint checking account after the checks drawn on the account were deducted, since Bethel's withdrawal of the funds worked a severance of the joint tenancy in said account.

The lower court surcharged Bethel $62,592.65 from which Bethel appeals.[1]

### I.  Savings Bonds and Retirement Fund

The lower court surcharged Bethel for her failure to include in decedent's estate the Series "E" United States Savings Bonds having a maturity value of $20,-400, and the Employers' and Commonwealth's accumulated contributions to the retirement fund on the basis

---

[1] The amount of the surcharge was determined as follows:

| | |
|---|---|
| 1. 83 Series "E" Bonds, m.v. $20,400 | $19,295.60 |
| 2. 150 shares (now 368½ shares) Western Pennsylvania National Bank stock | 5,175.00 |
| 3. Accrued income on said stock | 1,496.14 |
| 4. One-half interest in 20 Series "E" bonds m.v. $20,000 | 7,500.00 |
| 5. One-half of joint account at severance | 5,308.04 |
| 6. Employers' and Commonwealth's accumulated contribution to retirement fund | 23,817.87 |
| Total | $62,592.65 |

that a confidential relationship existed between decedent and Bethel at the time said transactions were consummated. Consequently, we must first determine whether the lower court was correct in deciding that a confidential relationship existed.

The criteria giving rise to a confidential relationship were enunciated in *Leedom v. Palmer*, 274 Pa. 22, 25, 117 Atl. 410 (1922), wherein it was stated: ". . . Confidential relation is not confined to any specific association of the parties; it is one wherein a party is bound to act for the benefit of another, and can take no advantage to himself. It appears when the circumstances make it certain the parties do not deal on equal terms, but, on the one side there is an overmastering influence, or, on the other, weakness, dependence or trust, justifiably reposed. . . ." See *Brooks v. Conston*, 356 Pa. 69, 51 A. 2d 684 (1947); *Hamberg v. Barsky*, 355 Pa. 462, 50 A. 2d 345 (1947); *Null's Estate*, 302 Pa. 64, 153 Atl. 137 (1930).[2]

The lower court in its opinion states that shortly before the period of confidential relationship began Hazel knew exactly what she was doing and fully intended to do what she did. There is little, if any, evidence on the record to indicate that during the period of confidential relationship as determined by the lower court Hazel's mental condition deteriorated to such an extent that Bethel could have exerted an overmastering influence upon her in the conduct of her business affairs. The great preponderance of the evidence in-

---

[2] "Confidential relationship" as used throughout this opinion is distinguishable from undue influence. One can be in a confidential relationship without exerting undue influence just as undue influence can be exerted by one not in a confidential relationship. As pointed out in *Brooks*, supra, at 76-77, when a confidential relationship has been established, the burden is then shifted to the party to prove absence of fraud and that the transaction was fair and equitable.

dicates that although Hazel was weakening physically, she remained mentally alert until the day she died. The testimony of her fellow teachers, her minister, her housekeeper, her nurse during her last days and her niece and nephew, among others, indicates that Hazel knew what she was doing at all times. This being the case, we find that Hazel remained mentally competent until her death.

Since we find that the decedent was mentally competent we must determine whether Hazel's physical deterioration was sufficient by itself to create a confidential relationship.

In *Snoder v. Lenhart,* 363 Pa. 371, 69 A. 2d 382 (1949), the decedent, by instrument, gave a joint interest in a savings account to his brother and nephew. The decedent, who had been hospitalized for cancer, executed the instrument approximately one month before he died. The decedent's niece contended that the decedent stood in a confidential relationship with his brother and nephew, but the court rejected this contention saying that although he was suffering from cancer, there was no evidence on the record to indicate that the decedent suffered any impairment of will or mind.

In *Union Trust Company of New Castle v. Cwynar,* 388 Pa. 644, 131 A. 2d 133 (1957), an 80 year old widower who was mentally sound but physically incapacitated made substantial gifts of real and personal property to a 25 year old woman. The court held that no confidential relationship existed between the two, but that the relationship between them was one of friendship which had its genesis in a business association.

Both the *Snoder* and *Cwynar* cases are consistent with the principle that the test for determining the existence of a confidential relationship should not be

based upon decedent's physical infirmities, but rather should be based upon the extent to which decedent's mental capacity has been impaired as a result of those physical infirmities. We believe that this is the proper test to be applied in the instant case. Although Hazel was weakening physically, she nevertheless remained mentally competent, and was fully aware of the consequences of her acts. Thus Hazel knew what she was doing when she signed the forms for the reissuance of the bonds and for the change of the beneficiary of her retirement fund. In view of these circumstances, we are of the opinion that Bethel was not in a position to exert such an overmastering influence upon Hazel and that Hazel was not so dependent upon Bethel so as to create a confidential relationship between the two sisters.

## II. Joint Checking Account

The lower court surcharged Bethel for one-half of the fund remaining in the joint checking account, one-half of the 300 shares of stock of the Western Pennsylvania National Bank, the accrued income on that stock, and one-half of the Series "E" United States Savings Bonds having a maturity value of $20,000, reasoning that when Bethel signed two checks for the purchase of the stock and bonds, the joint tenancy between Hazel and Bethel was severed, and a tenancy in common was created, each sister being entitled to one-half of the assets. We disagree.

In *Berhalter v. Berhalter*, 315 Pa. 225, 228, 173 Atl. 172 (1934), we enunciated the proper test to be applied in all cases involving the severance of a joint tenancy. We said: "Where both husband and wife have the power to withdraw funds deposited in a joint account, the power must be exercised in *good faith for*

*the mutual benefit of both,* and cannot be rightly exercised by the fraudulent withdrawal of the corpus of the funds for the exclusive use of one for the purpose of depriving the other of any use thereof or title thereto." (Emphasis supplied).

There are several cases in which the acts of a joint tenant were held to have severed the joint tenancy and to have created a tenancy in common. *Berhalter v. Berhalter,* supra; *Reifschneider v. Reifschneider,* 413 Pa. 342, 196 A. 2d 324 (1964) ; *Stemniski v. Stemniski,* 403 Pa. 38, 169 A. 2d 51 (1961) ; *Lindenfelser v. Lindenfelser,* 396 Pa. 530, 153 A. 2d 901 (1959) ; *Werle v. Werle,* 332 Pa. 49, 1 A. 2d 244 (1938), and *Madden v. Gosztonyi Savings and Trust Company,* 331 Pa. 476, 200 Atl. 624 (1938). However, in each of those cases, one of the joint tenants was appropriating jointly held property for his exclusive use and *not for the mutual benefit of both tenants.* This is not the situation in the instant case since Bethel did not fraudulently withdraw the funds in the account, but rather invested those funds for the mutual benefit of herself and Hazel. All she did was to change the *form* of the assets and in no way did she use those funds for her exclusive purposes. Thus Hazel was deprived neither of the use of those assets nor of title to them.

Mrs. Rist contends that Hazel's lack of knowledge of and her failure to consent to the change in the form of the assets rendered this change solely for the benefit of Bethel and not for their mutual benefit. The record fails to disclose whether Hazel consented to Bethel's conduct, but assuming *arguendo* that a confidential relationship existed between the two sisters and that Hazel was unaware of Bethel's activities, the fact remains that Hazel did not suffer any injuries as a result of Bethel's act. Rather than have the money lie dormant in a joint checking account, Bethel put

the fund in investments which were likely to increase the value of the assets. Since the stock and bonds were in joint names, both sisters stood to gain from the change in the form of the assets and thus Bethel's act *inured to the mutual benefit of both sisters.* Consequently, we are of the opinion that Bethel's actions were insufficient to destroy the joint tenancy with right of survivorship and to create a tenancy in common.

Decree reversed. Costs on the estate.

Mr. Justice EAGEN concurs in the result.

Mr. Chief Justice BELL took no part in the consideration or decision of this case.