McClatchy Estate (John H. McClatchy).

Argued May 23, 1968. Before BELL, C. J., MUSMAN-NO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Desmond J. McTighe*, with him *Philip D. Weiss*, and *McTighe, Koch, Brown & Weiss*, for appellant.

*J. Brooke Aker*, with him *Frank I. Ginsburg*, *F. Martin Duus*, and *Chadwick, Petrikin, Ginsburg & Wellman*, and *Smith, Aker, Grossman & Hollinger*, for appellees.

OPINION BY MR. JUSTICE COHEN, January 15, 1969:

This is an appeal from a decree of the Orphans' Court of Montgomery County dismissing objections to the account of John B. McClatchy and Richard A. McClatchy, executors of the estate of John H. McClatchy, deceased.

John H. McClatchy died testate on March 12, 1960. Two of his sons, John B. and Richard A. McClatchy qualified as executors under the will. The first and final account of the executors was filed on April 2, 1962. Objections were filed to that account by appellants, heirs under the will of decedent. The objections which appellants pursue on appeal are as follows:

1. The executors should be surcharged for failing to include in the estate stock of the 69th Street Community House Corporation, the 69th and Ludlow Streets Building Corporation and the 69th and Sansom Streets Building Corporation.

2. The executors should be surcharged for the repayment, from the probate estate of life insurance premiums paid on the life of decedent by the 69th Street Community House Corporation.

3. Certain counsel fees and executors' commissions claimed or paid in the account should be denied.

4. Certain conveyances of real estate by decedent to executor John B. McClatchy during his life were invalid, and consequently such real estate should be included in the estate.

5. The executors should be surcharged for refunding from the estate to the 69th Street Community House Corporation and the 69th and Ludlow Streets Building Corporation certain monies allegedly drawn in advance by decedent as salary for services to be rendered after the date of his death.

We will dispose of these objections in the above order.

I. Stock of the 69th Street Community House Corporation, 69th and Ludlow Streets Building Corporation, and 69th and Sansom Streets Building Corporation

Appellants contend that shares in the aforementioned corporations were owned by decedent at the time of his death and hence should have been included in decedent's estate.

The facts pertinent to this issue are as follows: Decedent and one Samuel Clevenger were business associates in the 1920's. Decedent gave Clevenger and his wife ground rents on properties owned by decedent. In 1939 two notes payable to the Clevengers were given in lieu of the payment of the ground rent liability. When the two notes were signed, decedent pledged all of his stock in the said corporations as collateral for their payment. On December 1, 1939, Rosemary D. McClatchy, wife of executor John B. McClatchy, purchased the notes from the Clevengers and acquired decedent's stock as collateral. On May 1, 1940, the parties who are now executors wrote letters to the corporations calling attention to the fact that the notes were in default because of nonpayment of interest and because the corporations were insolvent. The letters contained a demand for immediate payment. On May 13, 1940, the corporations, acting through decedent, replied to those letters stating that the companies were unable to pay the notes, that they were insolvent, and that

owing to their precarious financial position, it was hoped that no action would be taken which would result in bankruptcy. However, on June 1, 1940, the notes were foreclosed upon and the collateral (the stock) was sold to the parties who are now executors for $1.00, there being no competitive bidding by any other party. No notice of the sale was given to decedent.

Appellants contend that this sale did not constitute a valid foreclosure because (1) the notes on which the sale was based were not in default since no interest or principal payments were due at the time of the foreclosure sale; (2) there was no default resulting from insolvency and (3) no notice of the sale was given to decedent.

It is a well accepted principle that heirs cannot have interests in decedent's property higher than those which decedent had himself. *Grossman v. Hill*, 384 Pa. 590, 122 A. 2d 69 (1956), Page, Wills §59.2 (3d ed. 1962). Thus, if decedent could not have brought an action for the recovery of the stock, then neither could appellants. Appellants' objection is based upon events which occurred between decedent and appellees during a period of time so far in advance of decedent's death (20 years) that had decedent himself at the time of his death attempted to bring any such action based upon the event in question, his action would have been barred by the Statute of Limitations set forth in the Act of March 27, 1713, 1 Sm. L. 76, 12 P.S. §31, and the Act of March 28, 1867, P. L. 48, 12 P.S. §41, which limit the bringing of an action to a period no later than six years after the cause of action has accrued. Appellants contend, however, that the Statute of Limitations was tolled because of the concealment of the true situation from decedent with respect to the acquisition of the stock via the foreclosure proceedings.

We must reject this contention in light of the amount of time which passed between the foreclosure sale and decedent's death, the benefits which decedent received from the corporations, and the fact that he personally had a part in reissuing the certificates of stock after the sale was made. Furthermore, certain memoranda written by decedent indicate that he was satisfied with the overall state of his business affairs and had no intention to change that state of affairs even if he had been able to do so.

Appellants further contend that the stock should be held in trust for decedent because the purchase of decedent's stock by the parties who are now executors violated a confidential relationship which existed between them. The cases are clear that a parent-child relationship does not per se constitute a confidential relationship. *Null's Estate*, 302 Pa. 64, 153 Atl. 137 (1930); *Leedom v. Palmer*, 274 Pa. 22, 117 Atl. 410 (1922). In order to establish the existence of a confidential relationship it must be shown that there was an overmastering influence on the one side and weakness, dependence or trust on the other. *Carson Estate*, 431 Pa. 311, 245 A. 2d 859 (1968); *Brooks v. Conston*, 356 Pa. 69, 51 A. 2d 684 (1947); *Null's Estate*, supra; *Leedom v. Palmer*, supra.

Appellants attempt to show the existence of a confidential relationship between decedent and the executors on the basis of the memoranda written by decedent praising executor John B. McClatchy for his efforts to preserve the family business during difficult times. We believe that this evidence is insufficient to indicate that decedent was or could have been imposed upon in 1940. There is no evidence in the record to indicate that at that time decedent was unable to handle his financial and business affairs or was in any way so completely dependent upon the executors so as to

create a confidential relationship which would then shift the burden onto the executors to prove the absence of fraud and that the transaction was fair and equitable, *Carson Estate*, supra; *Brooks v. Conston*, supra.

Accordingly, we reject appellants' contention that the stock of the three corporations should have been included in decedent's estate.

## II.  Life Insurance Premiums

Between 1946 and 1957, the 69th Street Community House Corporation paid life insurance premiums on insurance policies owned by decedent on his own life in the amount of $63,322.74.  The executors' account discloses that Community was reimbursed by the estate for the premiums paid.

Appellants assert that the executors should be surcharged for these payments on the basis that Community's claim was invalid because (1) the executors were guilty of self-dealing in recognizing and paying the claim and (2) there was no legal obligation on the estate to reimburse Community because any amount due was barred by the Statute of Limitations.

In order to justify this payment, the executors rely exclusively upon the testimony of a nonstockholder and salaried employee of Community.  His testimony indicated that decedent and Community entered into an oral agreement whereby at decedent's death the premiums advanced by Community would be repaid out of the proceeds of the life insurance policies.

After carefully analyzing the testimony concerning the alleged oral agreement, we are compelled to agree with the lower court's determination that the agreement between decedent and Community created a legally enforceable obligation on the estate to render repayment.

Appellants' contention that the Statute of Limitations has run as to all payments prior to 1954 is likewise without merit since no payment was due Community until decedent's death. The Statute of Limitations did not begin to run until Community's cause of action had accrued and since that event did not occur until decedent died in 1960, appellants' contention must fail.

We, therefore, are of the opinion that the executors acted properly in paying $63,322.74 to Community as reimbursement for the payment of life insurance premiums on the life of decedent.

### III. Executors' and Attorneys' Fees

Appellants contend that the executors' commissions of $5,000 and the attorneys' fees of approximately $20,-000 should not be paid out of the estate. Appellants base this contention on the claim that the efforts of the executors and attorneys were directed towards preserving the interests of the executors individually and not towards preserving the interest of decedent's estate.

With respect to this contention, we are in accord with the view expressed in the opinion of the lower court wherein it stated: "We agree that the major issues raised by these objections have related to the ownership of property claimed by the executors as their own. The fact that the objectors raised these issues, however, is not the fault of the executors, and the questions here under discussion could take on a serious mien only if the executors and their attorneys claimed additional fees for the present litigation which they have not. The executors and their counsel should certainly be compensated for the ordinary and normal work which they have done, and the responsibility assumed, which in an estate of this size, is considerable.

Probate, advertising, tax returns, and accounting are only some of the matters which have to date been handled by the executors and their attorneys. The fees and compensation claimed are in amounts which would be fair and reasonable had no extraordinary problems arisen in the estate." We therefore reject appellants' contention that these fees were improper.

## IV. Real Estate Conveyed by Decedent to John B. McClatchy

Appellants seek to surcharge the executors for failing to include as assets of the estate seven parcels of real estate located on the west side of 69th Street between Walnut and Locust Streets. These parcels were conveyed by decedent to executor John B. McClatchy in 1949. The deed recites that the consideration for the conveyances was $1.00 but John B. McClatchy testified that he actually paid $23,609.55.

Appellants argue that John B. McClatchy stood in a confidential relationship with decedent and that he failed to meet his burden of proving that the conveyances were free of taint, fraud, or abuse of this confidential relationship.

The argument of confidential relationship must again be rejected. There is no evidence that in 1949, as in 1940, decedent was or could have been imposed upon. There is no evidence suggesting decedent was not mentally capable or that he was unaware of the consequences of his acts. As stated previously, decedent was of sound mind and business intellect so as to negate any finding of a confidential relationship.

Assuming arguendo that a confidential relation existed, John B. McClatchy testified that he paid $23,-609.55 for the land in question. This testimony in our view would also justify the omission of this property from the estate by the executors.

We therefore reject appellants' argument that the real estate should be included in decedent's estate.

## V. Refund of Salaries

The account indicates that $1,057.55 was paid by the executors from the estate to the 69th Street Community House Corporation and that the same amount was paid to the 69th and Ludlow Streets Building Corporations as refunds for salary "unearned" by decedent before his death. These claims are explained by the executors as follows: In 1960, decedent was being paid a salary of $15,000 per year by each corporation. Immediately preceding his death he had received a check from each corporation in the amount of $3,856. The refunds in question were calculated by determining arithmetically decedent's weekly salary and then computing the number of weeks after his death for which he had drawn salary. The executors then repaid the corporation the sum so calculated.

The lower court sustained the executors' determination that these salary refunds were proper. The court said: "[i]t is certainly not for us here to determine why the salary was paid, although we may assume that it was not for current services, it was likely paid because it had been earned over many years through exercise of the recipient's abilities, intellect and loyalty." This Court also will not delve into the reasons for the payment but will accept the lower court's designation of the payments as "salaries." A man who is dead cannot receive a salary so that the refund of the $2115.10 to the corporations will not subject the executors to surcharge.

In summary, we conclude that (1) the executors should not be surcharged for not including the stock of the various corporations in decedent's estate; (2) the executors should not be surcharged for repaying

the life insurance premiums advanced by the 69th Street Community House Corporation; (3) the executors' and attorneys' fees were reasonable and proper; (4) the real estate conveyances from decedent to executor John B. McClatchy were properly excluded as assets of the estate and (5) the executors should not be surcharged for refunding from the estate to the 69th Street Community House Corporation and the 69th and Ludlow Streets Building Corporation monies drawn by decedent before his death.

Decree affirmed. Costs on appellants.

Mr. Justice MUSMANNO did not participate in the decision of this case.