## McClatchy Estate (Mary E. McClatchy).

Argued May 23, 1968. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Desmond J. McTighe,* with him *Philip D. Weiss,* and *McTighe, Koch, Brown & Weiss,* for appellant.

*J. Brooke Aker,* with him *Frank I. Ginsburg, F. Martin Duus,* and *Chadwick, Petrikin, Ginsburg & Wellman,* and *Smith, Aker, Grossman & Hollinger,* for appellee.

OPINION BY MR. JUSTICE COHEN, January 15, 1969:

This is an appeal from a decree of the Orphans' Court of Montgomery County dismissing objections to the account of John B. McClatchy, executor of the estate of Mary E. McClatchy, deceased. This case was tried as a companion case in the court below with *Mc-*

*Clatchy Estate,* also decided today. 433 Pa. 232, 249 A. 2d 330 (1969).

Appellants, heirs under the will of decedent, seek to surcharge the executor for his failure to include the following items in decedent's estate:

(1) $59,849.25 paid to the 69th Street Community House Corporation for life insurance premiums advanced on policies on the life of decedent's husband.

(2) Amounts paid by the estate for the executor's commission and attorneys' fees.

## I Life Insurance Premiums

Between 1946 and 1957, the 69th Street Community House Corporation paid life insurance premiums on policies owned by decedent on the life of her husband in the amount of $59,849.25. The executor's account disclosed that Community was reimbursed by the estate for the premiums paid.

Unlike the situation which existed in the *McClatchy Estate,* supra, there is no evidence that there was any oral or written agreement between decedent and Community for repayment of those premiums. In order to justify this payment the executor relies exclusively upon testimony concerning a statement made by decedent's husband to an employee of Community. However, there is no evidence that in making this statement decedent's husband was acting as an agent of decedent and/or had the power to commit her or her estate to any obligation. Consequently, we are of the opinion that the payment of $59,849.25 to Community was improper, and that the executor should be surcharged for that amount.

## II Executor's Commission and Attorneys' Fees

Appellants argue that the estate should not pay the executor's commission and attorneys' fees when the

services of the executor and the attorneys were directed primarily toward proving that certain assets were not includable in the estate.

We reject this argument for the same reasons enunciated in our decision in the *McClatchy Estate*, supra. The executor's commission of $7,225 and the attorneys' fees of approximately $8,750 are reasonable and proper in light of the fact that the net balance of decedent's estate was in excess of $250,000. Furthermore, there is no evidence indicating that the executor and the attorneys claimed additional fees for the present litigation.

We therefore are of the opinion that appellants' objection as to the propriety of paying the executor's commission and attorneys' fees from the estate are without merit and should be dismissed.

Decree reversed in part and affirmed in part and the case remanded to the court below to enter a decree consistent with this opinion. Costs on appellee.

Mr. Justice MUSMANNO did not participate in the decision of this case.

---

CONCURRING AND DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I agree with the majority's conclusion as to the executor's commission and attorneys' fees. However, I am unable to agree with the majority that the executor should be surcharged for his reimbursement to the 69th Street Community House Corporation for the life insurance premiums the latter had paid on a policy on the life of John McClatchy. The decision of this Court in the companion case, *McClatchy Estate*, 433 Pa. 232, 249 A. 2d 320 (1969), compels a result contrary to the one the majority now reaches. In that case, this Court concludes that there was sufficient testimony to find an agreement between John McClatchy (Mary's hus-

band) and Community creating a legally enforceable obligation on John McClatchy's Estate to reimburse Community for the amount of premiums Community paid on the policy on John McClatchy's life. The same testimony which supported this finding was used by the court below to find that there was a binding agreement as to the repayment of the premiums from proceeds of the policy in issue here.

However, the majority opinion somehow feels compelled to distinguish this policy because the proceeds were to go to a different estate, and concludes that Mary's estate need not reimburse Community for these premiums. This it does by concluding that "there is no evidence that in making this statement [which created the obligation] decedent's husband was acting as an agent of decedent and/or had the power to commit her or her estate to any obligation."[1]

In my view decedent's husband no more needed the authority of an agent or the power to commit his wife's estate than a rich uncle needs permission to will his woebegotten nephew $1,000,000. What happened here is quite clear. Mary McClatchy's husband wished to secure an insurance policy on his life and make her estate the beneficiary thereof. But he was

---

[1] The curious reasoning of the majority in this case and its companion produces a combined result which is strange indeed. The majority acknowledges that there *was* an agreement for the repayment of the premiums. Since it then concludes that there is no responsibility on the part of the estate to repay the excess proceeds, it appears that Community's agreement to be reimbursed out of the proceeds is a meaningless one. The result of this disposition is twofold: it creates a cost free windfall for Mary's estate from life insurance proceeds the premiums for which were paid by neither Mary nor her husband; it leaves Community with not even a hint of where it should turn to seek the reimbursement to which it has every reason to think it is entitled. By viewing the two majority opinions side by side the impression is that *no* one is responsible to Community. This just should not be so.

unable or did not care to pay the premiums himself, and there is clear evidence that he arranged for Community to pay them with the understanding that Community would be reimbursed for all the premiums it paid on the policy. John McClatchy in effect did not commit his wife's estate to do anything. What he actually did was to agree with Community that his wife's estate would receive the proceeds of this insurance, *less* the amount paid by Community for premiums.[2] The fact that the *entire* proceeds were first paid into the estate before the reimbursement claim was filed should not change the result. The arrangements were entirely between John McClatchy and Community and the court below properly held that under them Community was entitled to reimbursement. I would affirm the court below.

Mr. Justice O'BRIEN joins in this opinion.

---

[2] Thus the estate was obligated to do nothing but receive the gratuitous payment of the net proceeds of the insurance policies.