584 A.2d 910

**In the Matter of the ESTATE OF Mary EVASEW, Deceased.**

**Appeal of Francis J. PULEO, Appellant,**

**v.**

**Alexander EVASEW, Heir, and Helen Holeva, Executrix of the Estate of Mary Evasew, Deceased, Appellees.**

Supreme Court of Pennsylvania.

Argued Oct. 24, 1989.

Decided Dec. 28, 1990.

Andrew S. Wade, for appellant.

William J.C. O'Donnell, for Helen Holeva.

Fred T. Cadmus, III, for Alexander Evasew.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.*

Mary Evasew died testate on September 28, 1985, designating her seven children as residuary beneficiaries including her children, Helen Holeva, Alexander Evasew and Robert Evasew. Helen Holeva was appointed Executrix of the estate and was authorized by the decedent's will to sell any estate property "for such price or prices and upon such terms and conditions as she, in her sole discretion, may deem best." (Record 0a). At the time of her death, the decedent owned two parcels of real estate, property situate on Church Street and a farm in Charleston Township, Chester County. In an effort to settle the estate promptly, the Executrix decided to sell both properties. To assist her, the Executrix hired J. Puleo and Sons to appraise both properties for estate tax purposes and engaged them to sell the Church Street property. At this time, the Executrix was already undertaking negotiations with a prospective buyer for the purchase of the farm. Appellant, acting on behalf of J. Puleo and Sons, appraised the farm at between

* This case was reassigned to this writer.

$65,000 and $80,000.[1] Negotiations for the sale of the farm were protracted. It was during this process that Appellant overheard a telephone conversation between the Executrix and a prospective buyer in which the buyer offered $75,000 for the farm. Thereafter, Appellant offered to purchase the property for $81,000 which the Executrix requested be submitted in writing to the attorney representing the estate.

After Appellant's offer was tendered, a second appraisal for the farm from a different appraiser was received. This appraisal suggested a list price for the farm between $145,000 and $160,000. The trial court later concluded on the basis of independent appraisals that the property was worth far more than the $81,000 offered by Appellant. In spite of the disparity between the appraisals, the Executrix entered into an agreement for the sale with the Appellant for $81,000.[2]

Robert and Alexander Evasew then commenced this litigation by filing a "Petition to Restrain Sale of Real Estate under PEF Code, Sec. 3353 and 3360 (20 P.C.S. 3360)." In this petition, Robert and Alexander Evasew alleged, *inter alia*, that Appellant procured the acceptance of his sales agreement for the purchase of the farm through fraud, by his failure to advise the Executrix of the fair market value and by Appellant buying the property himself; that the property was procured through the decedent's mistake; and that the transaction was tainted as a result of a conflict of interest between Appellant, as agent for the estate with regard to the Church Street property, and as buyer of one of its two principal assets.

Following hearings, the trial court granted the petition, relying in part upon the *Estate of Hughes*, 357 Pa.Superior Ct. 104, 515 A.2d 581 (1986), and in part upon the trial court's finding that a confidential relationship existed be-

1. The Church Street property was eventually sold and is not the subject of this appeal.
2. The actual sale was with Triple T Farms of which Appellant was the principal owner.

tween the Appellant and the Executrix and that Appellant breached that confidence. The Superior Court affirmed summarily on the basis of the trial court's opinion. 380 Pa.Superior Ct. 656, 547 A.2d 444. In addition, in a footnote, the Superior Court held that the trial court's reliance on the Superior Court's opinion in *Estate of Hughes*, subsequently reversed by this Court, was secondary and not germane to the disposition of this appeal. In any event, the Superior Court concluded that our opinion in *Estate of Hughes* was distinguishable from this appeal and therefore not applicable. We granted allocatur to review the applicability of our reasoning in *Estate of Hughes*, 517 Pa. 410, 538 A.2d 470 (1988). For reasons explained below, we affirm.

In *Estate of Hughes*, the decedent died intestate survived by four children. Hughes' daughter, Mrs. Solomon, the Administratrix, entered into a sales agreement for the purchase of real estate with James Granito for $42,000. Prior to accepting the offer, the Administratrix had two appraisals performed. The sales agreement was contingent upon court approval. In accordance with the agreement, the Administratrix petitioned the court and provided notice to her brothers and sisters. As a result of this notice, the brothers and sisters tendered a subsequent offer from John Haretos in the amount of $60,000. After taking testimony, the court authorized the Administratrix to accept the second offer notwithstanding the first agreement. Granito filed exceptions to the order. The court *en banc* granted leave to the estate to file a request restraining the sale to Granito. The court then granted the relief, restrained the sale to Granito and authorized the conveyance of the property to Haretos. Granito again filed exceptions which were dismissed and that dismissal was affirmed by the Superior Court.

Although the estate and the lower court relied upon Section 3355 of the Probate and Fiduciary Code, 20 P.C.S. Section 3355, we held that Section 3360(a) of the Code was controlling. Section 3360(a) "clearly and unambiguously states that absent fraud, accident or mistake a court may

not set aside an agreement to sell estate property ... The intent of the legislature in enacting this statute was to prevent courts from being put in the position of being super executors/administrators, and to leave essentially private transactions in the hands of the individuals involved." 517 Pa. at 415, 538 A.2d at 472.

We distinguished Section 3360(a) from Section 3355, which is only applicable under circumstances in which the personal representative has no authority to sell property. We then held that the remedy for an improvident sale is a surcharge action, not a restraint of the sale. 517 Pa. at 416, footnote 5, 538 A.2d 472, footnote 5.

█ The trial court in this instance restrained the sale of the farm based in part upon the conclusion that the $81,000 offer was grossly deficient. Citing Section 3360(a) and the Superior Court opinion in *Estate of Hughes, supra,* the trial court concluded that notwithstanding Section 3360(a), the court was empowered to restrain an improvident sale without a finding of fraud, accident or mistake. This was coupled with an expressed finding that no fraud had occurred here. As an alternative theory, the trial court determined that a confidential relationship existed here, that a breach of that relationship occurred, and that the breach made the agreement *prima facie* voidable. While the trial court's conclusion here is sound, that court's reasoning is confused. We find that the trial court was expressly authorized to restrain the sale here under the express language of Section 3360(a), and under *our* decision in *Estate of Hughes,* for the following reason.

█ Fraud is a legal term symbolizing a coat of many shades and coloring. The word "fraud" is a generic term which embraces a great variety of actionable wrongs and may be actual or constructive accordingly as it is knowingly or innocently made, *LaCourse v. Kiesel,* 366 Pa. 385, 77 A.2d 877 (1951), *Appeal of Kelly,* 108 Pa. 29, 32 W.N.C. 323 (1884). The trial court's conclusion that no fraud occurred here was simply wrong given that court's conclusion that a

breach of a confidential relationship did occur. The latter constituted constructive or implied fraud. To characterize the breach of a confidential relationship as fraud is supported by the great weight of authority both in Pennsylvania and across the country.

There is, of course, no question here as to the existence of a confidential relationship between Appellant and the Executrix, Mary Evasew. Where a fiduciary, confidential or unequal relationship exists, the following rules apply.

Although as a general rule fraud is not presumed, and the burden of establishing it rests on the party who alleges it, that rule is somewhat relaxed in cases where a fiduciary relation exists between the parties to a transaction or contract, and where one has a dominant and controlling force or influence over the other. In such cases, if the superior party obtains a possible benefit, equity raises a presumption against the validity of the transaction or contract, and casts upon such party the burden of proving fairness, honesty, and integrity in the transaction or contract. He must show that there was no abuse of the confidence, that he has acted in good faith, and that the act by which he is benefited was the free, voluntary, and independent act of the other party, done with full knowledge of its purpose and effect. Moreover, it has been held that where the relations between contracting parties appear to be of such a character as to render it certain that they do not deal on terms of equality, but that from one party's superior knowledge of the matter derived from a fiduciary relationship, or from overmastering influence, weakness, dependence, or trust justifiably reposed, unfair advantage in the transaction is made probable, the transaction is presumed void, and the burden is shifted to, and it is incument upon, the stronger party to show affirmatively that no deception was practiced and that all was fair, open, voluntary, and well understood. It is said that a fiduciary seeking to profit by a transaction with the one who confided in him has the burden of showing that he communicated to the other,

not only the fact of his interest in the transaction, but all information he had which it was important for the other to know in order to enable him to judge of the value of his property. Thus, if in a transaction between the parties who stand in a relationship of trust and confidence, the party in whom the confidence is reposed obtains an apparent advantage over the other, he is presumed to have obtained that advantage fraudulently; and if he seeks to support the transaction, he must assume the burden of proof that he has taken no advantage of his influence or knowledge and that the arrangement is fair and conscientious.

37 Am Jur 2d, Fraud and Deceit, Section 441. See also, *Darlington Appeal*, 86 Pa. 512 (1878); *Audenreid's Appeal*, 89 Pa. 114 (1879); *Harrison v. Welsh*, 295 Pa. 501, 145 A. 507 (1929); *Union Trust Co. of New Castle v. Cwynar*, 388 Pa. 644, 131 A.2d 133 (1957); *Carson's Estate*, 431 Pa. 311, 245 A.2d 859 (1968); *Clark's Estate*, 467 Pa. 628, 359 A.2d 777 (1976).

In *Young v. Kaye*, 443 Pa. 335, 279 A.2d 759 (1971), this Court held:

When the relationship between persons is one of trust and confidence, the party in whom the trust and confidence are reposed must act with scrupulous fairness and good faith in his dealings with the other and refrain from using his position to the other's detriment and his own advantage. *McCown v. Fraser*, 327 Pa. 561, 192 A. 674 (1937); *Null's Estate*, 302 Pa. 64, 153 A. 137 (1930); *Popovitch v. Kasperlik*, 70 F.Supp. 376 (W.D.Pa.1947); see generally 17 C.J.S. Contracts § 184 (1963). This well settled doctrine, founded on strong considerations of public policy, renders inapplicable the general rule requiring an affirmative showing of fraud. To the contrary, transactions between persons occupying a confidential relationship are prima facie voidable, and the party seeking to benefit from such a transaction must demonstrate that it was "fair, conscientious, and beyond the reach of suspicion." *Leedom v. Palmer*, 274 Pa. 22, 25, 117 A. 410, 411

(1922). See also *McCown v. Fraser, supra,* 327 Pa. at 564, 192 A. at 676.

"It is impossible to define precisely what constitutes a confidential relation." *McCown v. Fraser, supra,* 327 Pa. at 564, 192 A. at 676. It is not restricted to any specific association of persons nor confined to technical cases of fiduciary relationship but is deemed to exist whenever the relative position of the parties is such that one has power and means to take advantage of or exercise undue influence over the other. *McCown v. Fraser, supra; Longenecker v. Zion Evangelical Lutheran Church,* 200 Pa. 567 [50] A. 244 (1901). Accordingly, a confidential relationship generally exists "between trustee and cestui que trust, guardian and ward, attorney and client, and principal and agent." *Leedom v. Palmer, supra,* 274 Pa. [at] 25, 117 A. at 412.

279 A.2d at 763. In *City of Harrisburg v. Bradford Trust Co.,* 621 F.Supp. 463 (D.C.Pa., 1985), the Court held that an omission is actionable as fraud only where there is an independent duty to disclose the omitted information; and that such an independent duty exists where the party who is alleged to be under an obligation to disclose stands in a fiduciary relationship to the party seeking disclosure; that in order to demonstrate the existence of a fiduciary relationship, the plaintiff must show a relationship involving trust and confidence; and that the proof must show the confidence reposed by one side and the domination and influence exercised by the other.

Breach of the confidential relationship here, amounting in law to implied or constructive fraud, was properly inferred merely from the inadequacy of Appellant's offer on the farm in comparison with the higher appraisal inexplicably ignored by the Executrix and in comparison with what the trial court found to be the substantially higher value of the property. The rule is as follows:

The fact that one in whom confidence is reposed by another obtains an apparent advantage over the latter in a transaction between them is a vital factor in raising the

presumption of fraud on the part of fiduciary or one in confidential relationship. Moreover, the unfairness of a transaction or the inadequacy of consideration is in itself a factor from which fraud can be inferred, and such inference will operate along with other evidence to support a finding of fraud. Gross inadequacy of consideration has been declared to constitute a badge of fraud. The inadequacy of consideration may be so flagrant as of itself to afford a presumption of fraud, as where a contract is such as no man in his senses and not under delusion would make on the one hand, and no honest or fair man would accept on the other....

37 Am Jur 2d, Fraud and Deceit, Section 440. See also, *Davidson v. Little*, 22 Pa. 245 (1853).

In short, we find that, on this record, breach of a confidential relationship occurred amounting to implied or constructive fraud; that said breach was not rebutted by evidence submitted by Appellant; and that in consequence of the existence of implied or constructive fraud, the trial court was fully authorized under Section 3360(a) to restrain the sale to Appellant as that court did.

Affirmed.

ZAPPALA, J., files a dissenting opinion in which NIX, C.J., joins.

ZAPPALA, Justice, dissenting.

I must take issue with the majority's underlying premise that a confidential relationship existed between these parties. Since that conclusion is unsupported by the credible evidence, then the remainder of the majority's analysis must also fall.

In *Frowen v. Blank*, 493 Pa. 137, 425 A.2d 412, 416–417 (1981), this Court defined a confidential relationship as follows:

The general test for determining the existence of such a relationship is whether it is clear that the parties did not deal on equal terms. *McClatchy's Estate*, supra [433 Pa.

232, 249 A.2d 320 (1969)]; *Carson Estate,* 431 Pa. 311, 245 A.2d 859 (1968); *Brooks v. Conston,* supra; *Null's Estate,* supra; *Leedom v. Palmer,* supra.

We have had occasion to describe a confidential relationship as follows:

Confidential relation is not confined to any specific association of the parties; it is one wherein *a party is bound to act for the benefit of another,* and can take no advantage to himself. It appears when the circumstances make it certain the *parties do not deal on equal terms,* but, on the one side there is an overmastering influence, or, on the other, weakness, dependence or trust, justifiably reposed; in both an unfair advantage is possible. *Leedom v. Palmer,* supra, 274 Pa. at 25, 117 A. at 411. See also *Scott Estate,* supra [455 Pa. 429, 316 A.2d 883 (1974)]; *Peoples First Nat'l Bk. & Trust Co. v. Ratajski,* 399 Pa. 419, 423, 160 A.2d 451, 552 (1960); *Kees v. Green,* 365 Pa. 368, 374, 75 A.2d 602 (1950); *Hamberg v. Barsky,* 355 Pa. 462, 50 A.2d 345 (1947).

A confidential relationship was again described in *Brooks v. Conston,* 356 Pa. 69, 76–77, 51 A.2d 684 (1947):

Confidential relation is any relation existing between parties to a transaction wherein one of the parties is bound to act with the utmost good faith *for the benefit of the other party* and can take no advantage to himself from his acts relating to the interest of the other party: *Leedom v. Palmer,* 274 Pa. 22, 117 A. 410; *Harrison v. Welsh,* 295 Pa. 501, 145 A. 507 [1929]; *Null's Estate,* 302 Pa. 64, 153 A. 137. This Court has recently defined confidential relationship in *Drob v. Jaffe,* 351 Pa. 297, 41 A.2d 407 [1945]. Mr. Justice Horace Stern said, p. 300 [41 A.2d 407]: "... a confidential relationship is not limited to any particular association of parties but exists wherever *one occupies toward another such a position of advisor or counsellor* as reasonably to inspire confidence that he will act in good faith for the other's interest ..."

That case was cited with approval in *Hamberg v. Barsky et al,* 355 Pa. 462, 466, 50 A.2d 345, and in *Shook v.*

*Bergstrasser*, 356 Pa. 167, 51 A.2d 681 [1947]. See also: *McCown v. Fraser*, 327 Pa. 561, 192 A. 674; *Metzger v. Metzger*, 338 Pa. 564, 14 A.2d 285 [1940]; *Stewart Will*, 354 Pa. 288, 47 A.2d 204 [1946]; *Dichter Will*, 354 Pa. 444, 47 A.2d 691 [1946]. (Emphasis added).

In the case *sub judice* it is clear that a confidential relationship did not exist between the parties. The evidence established that the appellant was retained to appraise the fair market value of the farm. Appellant had no obligation to either market or attempt to sell the property. However, appellant was retained to sell another piece of estate property which he satisfactorily did without incident.

Furthermore, the executrix was represented by legal counsel in the administration of the estate. Not only did the attorney for the executrix have estate experience but he also had a real estate broker's license. In fact, the offer in question was mailed directly to the estate's attorney. The executrix had a full opportunity to discuss appellant's offer with her attorney and did so prior to accepting the offer. Finally the estate's attorney witnessed the executrice's signature on the sales agreement, prior to returning it to the appellant.

The record also establishes that the executrix had received some experience in the selling of real estate when she sold the Church Street property. Prior to accepting the sale of the Church Street property, the executrix twice rejected offers as inadequate. Likewise, she also initially rejected appellant's offer for the farm. At the time she did accept the appellant's offer, she had in her possession another appraisal indicating that the farm property was worth twice as much as appellant's offer.

Finally, according to the testimony of the executrix, the fraud allegedly perpetrated by the appellant consisted of appellant not counseling her into obtaining a higher price for the property. This appellee was not required to do. As noted, his obligation was to appraise the property, not to list or sell it.

The record does not support the trial court's conclusion that a confidential relationship existed. Here we have an executrix, represented by legal counsel who is a licensed real estate broker, who consults that attorney prior to entering into an agreement for the sale of estate property. The appellant's duty was to give his opinion as to the value of the property for estate tax purposes. This he did. It was not his responsibility to counsel the executrix so as to maximize the estate return on the sale of the farm property. As such, he had no duty to assist the executrix in obtaining a higher price for the property. Under these facts, the trial court abused its discretion in concluding a confidential relationship existed between the parties.

Although I agree with the majority's interpretation of 20 Pa.C.S. § 3360(a) and the application of *Estate of Hughes*, supra, I find that its reliance upon Section 3360(a) is misplaced because no confidential relationship executed between the parties. As stated previously, Section 3360(a) requires a finding of fraud before an agreement will be declared unenforceable based upon inadequate consideration. Applying Section 3360(a) without the appropriate factual predicate will effectively neutralize that section. In this instance, the beneficiaries should have sought relief through a surcharge action. Under these facts, I would hold that the trial court erred in granting the petition to restrain the sale of property.

NIX, C.J., joins in this dissenting opinion.