Joi CAPLEN, Plaintiff,

v.

SECURITY NATIONAL SERVICING CORP., INC; Alaska Seaboard Partners, LP; Alaska Seaboard Investments, Inc.; and Security National Insurance Company, Inc., Defendants.

Civil Action No. 05–5982.

United States District Court, E.D. Pennsylvania.

Sept. 17, 2007.

Neil E. Jokelson, Neil E. Jokelson & Assoc., PC, Philadelphia, PA, for Plaintiff.

Joseph N. Mole, Leslie W. Ehret, Frilot Partridge LC, New Orleans, LA, Robert J. Murtaugh, The Chartwell Law Offices, LLP, Norristown, PA, for Defendants.

### Memorandum and Order

ANITA B. BRODY, District Judge.

#### I. Introduction

Plaintiff Joi Caplen brings Pennsylvania state law claims against her home mortgage lender, Alaska Seaboard Partners ("ASP"); ASP's general partner Alaska Seaboard Investments ("ASI"); the mortgage servicer, Security National Servicing Corp. ("SNS"); and the lender's captive insurance company, Security National Insurance Company, Inc. ("SNI"). The case centers around the "force-placed insurance" policies SNS bought from Lloyd's of London (a nonparty) and later from SNI to insure Caplen's home because Caplen had not provided proof of her own insurance, as required by the note and mortgage.

Caplen's home burned down. After the fire, it was discovered that Caplen actually did have her own insurance policy through her condominium association the whole time. That insurance policy paid out to rebuild Caplen's home. Nevertheless, Caplen brought breach of contract, breach of fiduciary duty, fraud, abuse of process, and Insurance Bad Faith Act claims against the defendants. I conclude that the defendants' Motion for Summary Judgment should be granted with respect to every claim.

#### II. Facts

The following facts are undisputed unless otherwise noted. In 1993, plaintiff Joi Caplen and her husband Larry E. Caplen executed a promissory note with Mellon Bank, N.A., secured by a mortgage on their home at 173 Orchard Court, Blue Bell, PA 19422. In 2000, the Caplens defaulted and Mellon Bank instituted foreclosure proceedings in the Common Pleas Court of Montgomery County. In 2001, the promissory note and mortgage were purchased by defendants ASP and serviced by defendants SNS. In March 2002, a $116,662.38 judgment was entered against the Caplens. The Caplens entered into a forbearance agreement with ASP in June 2002 that allowed them to resume making mortgage payments and stay in their home.

Both the promissory note and the mortgage contained a "force-placed insurance" clause specifying that if the Ca-

plens did not insure their home, the lender would purchase insurance for them. The premiums would be added to the Caplens' principal balance if the Caplens did not reimburse the lender. Because the Caplens did not provide proof of insurance, SNS obtained force-placed insurance. According to ASP's filings in the state court foreclosure proceedings, it began advancing insurance premiums in March 2001. Pltff. Ex. 6. The plaintiff's husband, Larry Caplen, testified that he and the plaintiff knew about the force-placed insurance policy in 2003 and relied on it to insure their home. Pltff. Ex. 10. The initial force-placed insurance policy was with Lloyd's of London. According to defendants, SNS cancelled the Lloyd's of London policy on December 31, 2003 and obtained a new, cheaper policy through defendant SNI. The SNI policy took effect on January 1, 2004. Def. Br. at 4 (citing dep. of Karen Branvold). The Caplens never received a copy of any of the policies until they were obtained through discovery in this action. The SNI force-placed policy contained an "Other Insurance" provision, which specified that the force-placed policy would be excess—that is, would take effect only to the extent the other insurance did not cover the damages. Def. Ex. J.

On November 10, 2004 the Caplens' home burned down. According to the Caplens, they mailed a letter to notify SNS of the fire and inquire about the force-placed insurance policy on November 17, 2004. It is undisputed that the letter bore an inaccurate zip code. According to SNS, they never received the November 17 letter. SNS said they did not discover that the property had been destroyed until after the Caplens defaulted again in the spring of 2005 and they inspected the property as part of their second foreclosure action.

The parties agree that in late April or early May 2005, the defendants found out that the Caplens' property was covered through a Greater New York Insurance Company insurance policy owned by their condominium association, the Blue Bell Woods Homeowner's Association ("the Greater New York Policy"). Pltff. Ex. 28. This policy was "intended to be primary and not to contribute with ... other insurance." *Id.* The Caplen home was repaired through that policy. Def. Exs. H and I. Apparently, neither the Caplens nor the defendants knew about the Greater New York Policy until after the home was destroyed. There is no dispute that after the property was restored by the Greater New York Policy, the Caplens sold it for a net profit. However, the plaintiff's husband Larry Caplen testified that he and the plaintiff were not satisfied by the pace or quality of repairs funded by the Greater New York Policy, and that they suffered the cost and inconvenience of having to maintain temporary accommodations. Def. Ex. 10 at 32–36. Larry Caplen also testified that based on the 2003 letter he received from defendants stating that they had purchased the force-placed policy, he "counted on" the force-placed policy and "thought" that it would cover temporary accommodations. *Id.*

All the insurance premiums charged to the Caplens by SNS for the force-placed policy were added to the balance of their mortgage principal and assessed against the Caplens in the foreclosure. On June 24, 2005, after defendants knew about the fire and the Greater New York Policy, $1,607.13 was assessed against the Caplens in an Amended Judgment for force-placed premiums paid from March 2001 through February 2005. Pltff. Ex. 6 and 27. Even after SNS found out about the Greater New York Policy, they continued to charge premiums for the force-placed insurance until the time the debt was paid off. Def. Reply at 9 n. 5. A total of $2,407.21 for forced-placed insurance was

demanded by and paid to the defendants at the time the mortgage was paid off in June 2006, after the home was sold at auction. Pltff Ex. 36.

## III. The Mortgage, Note, and SNI Force–Placed Insurance

Both the promissory note and the mortgage contained a force-placed insurance clause. Under the note, the Caplens agreed that

> If you require me to, I will insure the Collateral against loss or damage....Any insurance policy will provide for payment of the insurance proceeds to you *to the extent necessary to pay the amounts which I owe under this note. I will give you any insurance policy or a certificate to show that I have it.* If I do not buy and maintain the required insurance ... you may, if you chose, do these things for me for me [sic]. If you do this and I do not reimburse you for the premiums within a specified time you may add the unpaid balance of the premiums to the unpaid balance of the Principal Amount of this note. In this case, interest will be charged on the unpaid balance of these premiums at the rate shown on page 1 of this note, beginning on the date you paid the premiums
>
> I direct all insurance companies providing ... insurance on real property ....to pay you any money owed to me ... *You may use any such money to pay amount which I owe under this note.*

Def. Ex. B (emphasis added). Similarly, the mortgage specified that

> Mortgagor shall keep the Mortgaged Property insured against loss by fire ... in such amounts as Mortgagee shall require ... Mortgagor shall deliver written evidence of all such insurance to Mortgagee.

> If Mortgagor fails to obtain and keep in force any required insurance or fails to pay the premiums on such insurance Mortgagee at its sole option may elect to do so. In the event of loss Mortgagor shall give prompt notice to the Insurer and Mortgagee. Mortgagee at its option may elect to make proof of loss if Mortgagor does not do so promptly
>
> ... insurance proceeds shall be applied to restoration or repair of the Mortgage Property or to reduction of the Obligation, as Mortgagee may determine in its sole discretion.

Def. Ex. A.

An SNI force-placed policy was issued on January 3, 2005 in the amount of $90,982.42, with the caveat that "coverage decreases as unpaid principal balance decreases." Def. Ex. J. That figure coincides with the principal balance listed in the Amended Foreclosure Judgment from June 2005. Pltff. Ex. 27. "Security National Holding Company, LLC" was listed as the "Assured" (the insured). *Id.*

> Under the "Other Insurance" clause of the SNI forced-place insurance policy, If there is available to the Assured any other insurance at the time of loss ... covering the same property against the same perils insured against under this Policy ... this insurance shall not be called upon in contribution until the amount due from all such insurance shall have been exhausted; it being the intent of this insurance to indemnify the Assured for only the difference between the amount due from such other insurance and the amount of the actual loss sustained by the Assured, not exceeding, however, the applicable limit specified in this Policy.

Def. Ex. J.

## IV. Standard for Summary Judgment

Summary Judgment is proper "if the pleadings, depositions, answers to inter-

rogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that moving party is entitled to a judgment as a matter of law." *See* Fed. R.Civ.P. 56(c). The moving party need only show that "there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The evidence must be taken in the light most favorable to the plaintiff, but to defeat the defendant's motion there must be sufficient evidence for the jury to find reasonably for the plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## V. Claims against SNI

The claims against insurer SNI are dismissed. The plaintiff is not a named insured in the SNI-issued policy. SNI has no duty, contractual or fiduciary, towards the plaintiff. Nor has the plaintiff introduced evidence supporting a fraud claim against SNI. SNI's licensure statuses in Pennsylvania and Hawaii are irrelevant to this action, as the plaintiff has not argued that she has a private right of action under those states' insurance licensure laws.[1]

## VI. Contractual Rights Under the Force-Placed Insurance Policy

The plaintiffs case hinges on her view that under the force-placed insurance policy, the defendants ASI, ASP and SNS were obligated to provide insurance providing for reconstruction of the Caplens' home and their temporary housing costs beyond that paid for by the Greater New York Policy. However, the unambiguous language of the note and mortgage demonstrates that the plaintiff was not due anything more than she received.

As the Pennsylvania Supreme Court has noted, when the language of an insurance policy "is clear and unambiguous, a court is required to give effect to that language." *Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 557 Pa. 595, 735 A.2d 100, 106 (1999).[2] Likewise, the meaning of a contracts generally is "to be ascertained from the document itself" if the language is unambiguous. *Kripp v. Kripp*, 578 Pa. 82, 849 A.2d 1159, 1163 (2004). Caplen argues that the force-placed policy ought to have covered two additional costs: her temporary accommodations, and additional repairs beyond what the Greater New York Policy covered. With respect to temporary accommodations, the terms of the mortgage and note indicate that any force-placed insurance policy bought by the lender would cover only up to the remaining balance of the mortgage or the repair of the property. The note unambiguously specifies that the lender is entitled to collect insurance benefits to "the extent necessary to pay the amounts which I owe under this note." Def. Ex. B. The mortgage is a little less clear than the note, but it too specifies that any "insurance proceeds shall be applied to restoration or repair of the Mortgage Property or to reduction of the Obligation, as Mortgagee may determine in its sole discretion." Def. Ex. A. Nothing in the note and mortgage even remotely suggests that the coverage would extend to other

---

1. The state of Pennsylvania may want to examine for itself whether an insurer such as SNI that issues force-placed insurance policies on Pennsylvania properties owned by Pennsylvania residents is subject to the requirements of 40 P.S. § 46. I make no factu-al or legal ruling on SNI's legal status in Pennsylvania.

2. The mortgage and note contain Pennsylvania choice of law provisions. Def. Ex. A, B. None of the parties dispute that Pennsylvania law applies.

costs, such as temporary living accommodations pending repair.

As for additional repairs, the note and mortgage can be reasonably understood to provide only for excess insurance that would contribute to the extent that some other insurance did not cover the costs of restoration up to the remaining mortgage amount. The whole point of force-placed insurance is to fill the gap if other insurance has not been provided for. Further, the unambiguous terms of the SNI force-placed policy specify that it is an excess policy that will not pay a claim if any other insurance covers the same damages to that property.[3] Extrinsic evidence offered by the plaintiff to show that the SNI force-placed policy was in fact not an excess policy is not relevant in light of the unambiguous language of the policy.

The plaintiffs have not introduced any genuine issues of fact regarding the possibility that the Greater New York Policy did not completely cover the damages caused by the fire. Although Caplen argues that the home was not restored to her liking or to its precise past condition, she does not deny that her home was rebuilt and sold for a profit. She also does not point to any evidence in the record—other than her husband's conclusory testimony—that the repairs left her less than whole. This is insufficient. *Fireman's Ins. Co. of Newark, N.J. v. DuFresne,* 676 F.2d 965, 969 (3d Cir.1982). Because the plaintiff has not identified a genuine issue of material fact regarding whether the terms of the contract were fulfilled, summary judgment must be granted.

It may be that in a perfect world, subprime borrowers like the Caplens would have the full extent of their rights and benefits under force-placed insurance more carefully spelled out in their mortgage documents so that they would better understand that force-placed insurance insures the lender's interests rather than their own, even though those two interests may partially overlap. Illinois, for example, has enacted a consumer protection statute requiring lenders to insert language instructing borrowers that any force-placed insurance on their collateral will primarily protect the lender's interest rather than the borrower's. *See* Illinois Collateral Protection Act, 815 ILCS 180/10. However, such enhanced care towards borrowers is a matter for the Pennsylvania legislature to address. Here, under the reigning Pennsylvania contract law and the unambiguous language of the instruments, the plaintiff agreed that any force-placed insurance would protect only the remaining mortgage debt.

In light of the unambiguous language of the mortgage and note, and the fact that the Caplens' damages were covered by the Greater New York Policy, the legal status of the force-placed insurance contracts is irrelevant. Those contracts are a matter between the mortgage lender and its insurance company, not between the Caplens and the defendants.[4]

---

3. Plaintiff states in her Complaint that the SNI force-placed policy covering her property was never actually issued. Complt. ¶ 20. However, plaintiff has not pointed to any evidence that would show that the SNI policy was never issued, and defendants have provided evidence that the policy was in fact issued. That plaintiff disagrees with the terms or legality of the force-placed policy is a separate matter from whether the policy was actually issued.

4. In a setting different from this case, the nature of the force-placed policies bought by the lender might be of legal import to the borrower—for example, if the premiums were excessive; or if the insurer *did* have an obligation to pay out benefits for the covered property; or if the lender never obtained the coverage as it said it would and coverage was due.

## VII. Fiduciary Duty

■ Plaintiff argues that all the defendants breached a fiduciary duty towards her. At least one court has held that the force-placed insurance arrangement does create a fiduciary duty between homeowner and lender. *See American Bankers Ins. Co. of Florida v. Alexander* 818 So.2d 1073, 1085 (Miss.2001). However, even if a fiduciary relationship was formed by the lender's contractual undertaking to purchase insurance on the collateral, that duty would not have extended beyond the obligations laid out by the unambiguous language of the mortgage and note: that insurance be purchased to cover up to the existing principal balance on the mortgage loan in the event that no other insurance paid out to cover those damages. *See Basile v. H & R Block, Inc.* 563 Pa. 359, 761 A.2d 1115, 1121 (2000) (fiduciary duty based on agency only extends to the scope of the agency agreement). Because, as explained above, the defendants met this obligation, there could be no breach of a fiduciary duty even if such a duty existed.

■ Nor does there exist a fiduciary duty based on a confidential relationship that required the defendants to insure the Caplens beyond the remaining principal of the property. The Pennsylvania courts have never held that a fiduciary duty arises under relationships created by arms-length business contracts. *See eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 22–23 (Pa.Super.2002). Instead, the Pennsylvania courts have found fiduciary duties where the power imbalance and dependency between the parties is extreme: attorney-client; guardian-ward; trustee and trust. *Matter of Estate of Evasew*, 526 Pa. 98, 584 A.2d 910, 913 (1990). There is no indication in the case law that the Pennsylvania courts would find a fiduciary relationship between a mortgage lender and a homeowner-borrower. While the parties in this case may differ in their experience and sophistication levels, this alone does not create a fiduciary duty. The plaintiff has not pointed to any genuine issue of material fact demonstrating a power imbalance rising to the level required to create a fiduciary duty.

## VIII. Fraud

Plaintiff has not pointed to material facts that would support a fraud claim with respect to the existence or nature of the force-placed insurance policy. In particular, plaintiff has not shown any actionable misrepresentation by the defendants. *See Gibbs v. Ernst*, 538 Pa. 193, 647 A.2d 882, 889 (1994). The defendants' exercise of their contractual rights under the note and mortgage cannot be fraud.

Plaintiff also argues that she was fraudulently charged insurance premiums during the period the defendants thought the force-placed policy was no longer in effect. However, she has not pointed to material facts that would support a claim that these premiums were fraudulently charged. Recovery of these premiums should be sought under a contract theory, which plaintiff has not advanced.

## IX. Abuse of Process

■■ Plaintiff alleges that the defendants' attempts to recover the force-placed insurance premiums in the second foreclosure action and later by refusing to release their lien constitute abuse of process. Under Pennsylvania law, abuse of process asks "whether there has been a 'perversion' of the process, or, whether a legal process has been used 'as a tactical weapon to coerce a desired result that is not the legitimate object of the process.'" *General Refractories Co. v. Fireman's Fund Ins. Co.* 337 F.3d 297, 307 (3d Cir.2003). The plaintiff has provided no evidence that the object of adding the insurance premiums

to the second foreclosure was intended to coerce a result that was not the legitimate object of the process, or that was a perversion of the process. Instead, the foreclosure process was used for its intended purpose: to liquidate collateral to satisfy a debt. That plaintiff disagrees that the debt was owed does not make the process abusive.

## ORDER

This 17th day of September, 2007, **IT IS ORDERED:** Defendants' Motion for Summary Judgment (docket entry # 32) is **GRANTED.**